No. 24,274.

Mabel Hickox, *Appellee*, v. W. J. Johnston, Sadie I. Wood, Adam
D. Johnston and M. M. Johnston (Earl R. Gilbert, as Ad-
ministrator, etc.) *Appellants.*

SYLLABUS BY THE COURT.

1. Contract—*Adoption of Minor—Conditions Performed by Minor—Contract
Enforceable.* A contract between foster parents and the mother of an in-
fant to adopt the child, treat her as their own, supported by sufficient con-
sideration, the conditions of which were performed by the child until she
reached her majority and was married, may be enforced and made the
basis of a valid claim against the estate of the foster parents, although the
statutory steps for a formal adoption were not taken in the probate court.

2. Same—*Evidence Supports Finding and Judgment.* The evidence examined
and held to be sufficient to support the findings and judgment to the effect
that the contract alleged had been made and was enforceable.

Appeal from Wyandotte district court, division No. 1; Edward L. Fischer,
judge. Opinion filed March 10, 1923. Affirmed.

*Elmer E. Martin*, and *H. E. Dean*, both of Kansas City, for the appellants.

*David F. Carson*, and *James T. Cochran*, both of Kansas City, for the
appellee.

The opinion of the court was delivered by

Johnston, C. J.: This action was brought by Mabel Hickox for
the specific performance of a contract between plaintiff's mother,
Beathea Thompson, and Thomas H. and Caroline Johnston, alleged
foster parents of plaintiff, and to recover the property they had at
their death, including the proceeds of a benefit certificate of in-
surance issued by the Brotherhood of American Yoemen. Plain-
tiff's demand was resisted by the defendants, who were the brothers
and a sister of Thomas H. Johnston. The Yoemen did not question
the validity of the certificate or its terms, but the money due on
the certificate or which they determined to be due, was brought into
court and they asked that it be determined to whom it should be
paid. The trial resulted in a finding for the plaintiff that the con-
tract relied on had been made, and the court entered a judgment
for its performance. The motion of defendants that judgment be
given for them notwithstanding the special findings was overruled,
and it was ordered that the $1,728.50 paid into court by the Yoemen

be held by the clerk until otherwise ordered. The defendants appeal.

The existence of the contract under which plaintiff claimed was the principal subject of controversy between the parties and to which substantially all the evidence in the case was directed. The plaintiff alleged that the Johnstons, who were childless, entered into an agreement with her mother, Beathea Thompson, that they would take and adopt plaintiff, who was then about six years old, as their own child, she to give them the love and services of a daughter as if she was their natural child. In pursuance of the agreement it was alleged that she was taken into the custody of the Johnstons, lived with and rendered them the services and affection of a child until she reached the age of about twenty-six, when she was married to Lois Hickox. Upon the evidence special findings were made to the effect that the agreement to take and adopt her as their child was made, that there was first an oral agreement, which was subsequently committed to writing, entered into by the Johnstons and the mother of plaintiff.

There is a contention that the evidence did not warrant the findings. There is a lack of direct evidence on the part of the dedendants as both of the Johnstons had died before the action was brought. Considerable testimony, however, in support of the claim that a contract was made was produced, but it was not shown that statutory proceedings for her adoption in the probate court were ever had. Both of the Johnstons repeatedly stated to neighbors that they had taken the child as their own and that they intended to adopt her, and to others that they had adopted her. They gave her the name of Mabel Ruth Johnston, and directed her mother to address her in that name and taught her to call them papa and mamma. She lived with and worked for them and was treated in all respects as their child until she was married in 1913. Lois Hickox, to whom she was married, asked and obtained their permission to marry her. In a letter written by Mr. Johnston to Beathea Thompson, he spoke of adoption papers which he had sent her, saying that they intended "to give the child a legal right to hold her share of any property that would be left to her. She is not our own child but those papers make her our child by law and give her the legal rights to her right as a child of ours." Later, and about eighteen months after the child had been taken by the Johns-

tons, a paper was prepared and sent to Mabel's mother, Mrs. Thompson, as follows:

"Having taken Mabel Ruth Thompson, now seven years old, for adoption as our child and having had her with us as such since February 22, 1898, we unite with her in stating that she is happy with us as her parents, and that we are happy with her as our child, and that we believe it to be the will of God that she has and shall have a home with us. The following witnesses concur with Mr. and Mrs. Thomas H. Johnston, in the foregoing statement. Parents, Thomas H. Johnston, Mrs. C. Johnston. Child, Mabel Ruth Johnston. Gospel Minister, W. H. Turner. Our neighbors, Oliver Jessup and Mrs. Oliver Jessup."

The mother testified that she signed the instrument before a notary public and mailed it to T. H. Johnston.

There is testimony that Mr. Johnston was asked if Mabel was his own child and he replied "No, this is a daughter I adopted when she was a small child." Mrs. Johnston told a witness that "Mabel was her adopted baby," and heard her tell Mabel in the presence of Mr. Johnston, that "all she had would some day be Mabel's." There is testimony too that Mrs. Johnston took out a policy of insurance on Mabel's life and directed the agent to make the policy payable to her as the mother of Mabel, and she afterwards paid the premiums on the policy. At one time, when Mabel was six or seven years old, the Johnstons went to the office of an attorney and told him that they had taken the girl and desired to go into the probate court and have the necessary steps taken for a regular statutory adoption, but no papers were prepared by the attorney and no such action was then taken. Evidence was received to show that Mabel did the ordinary work about the house that could be done by one of her age, that she was faithful to her foster parents and that the relations between her and them were amicable. There is some contrary evidence introduced as to their relations, but it was not deemed to be sufficient by the court and jury to overthrow that given in behalf of plaintiff. It is argued that the evidence to establish the existence of the contract has not been shown by the strength and cogency of evidence necessary to establish a contract of this character. It is necessary that such contract should be carefully scrutinized by the courts to prevent the enforcement of fraudulent claims, but it has been decided that such a contract may be proven by either direct or circumstantial evidence and when it is so established it should be given effect. (*Anderson v. Anderson,* 75 Kan. 117, 88 Pac. 743).

In *Bichel v. Oliver*, 77 Kan. 696, 95 Pac. 396, it was said:

"If the facts and circumstances brought out in the evidence, including the acts of the parties, are such as to raise a convincing implication that the contract was actually made and satisfy the court of its terms and performance and that there would be no inequity in its enforcement, it is sufficient." (Syl. ¶ 3.)

The claim of plaintiff cannot be sustained, of course, on the ground of a legal adoption, since it was not proven that the necessary legal steps were taken in the probate court, but while plaintiff cannot claim a right of inheritance under such a relation she is entitled to have an established contract for an adoption and the rights of a child enforced against the estate of the foster parents. (*Malaney v. Cameron*, 98 Kan. 620, 159 Pac. 19).

We think the evidence is sufficient to support the claim of plaintiff that the contract as alleged was made and substantially performed on the part of the plaintiff. In conformity to the contract there was a surrender of the custody of the child by its mother to the Johnstons. The plaintiff carried out her part in the execution of the contract by rendering services and social enjoyment to them for a period of about twenty years; that the Johnstons agreed to adopt plaintiff and treat her as their child and that she should have their property, and this was satisfactorily shown by both written statements and oral admissions, and there being nothing inequitable in the provisions of the contract, it should be enforced.

There were some objections to the testimony received and some of it may have been questionable, but we discover nothing that can be regarded as prejudicial error.

A criticism is made of an instruction upon the ground that the evidence in the case did not warrant an instruction relating to an agreement by the Johnstons to adopt the plaintiff or that she should be given the property of which they died seized, but we think there is no merit in the contention.

So far as the money which was brought into court by The Brotherhood of American Yoemen is concerned, that is, as to the amount due under the certificate and the disposition of the same, it may be said that these questions were left undetermined; they were reserved by the court for further order and adjudication. The findings and judgment determining the existence of the contract and adjudging enforcement is affirmed.