No. 25,211.

Mabel Hickox, *Appellee*, v. W. J. Johnston, Sadie I. Wood, Adam D. Johnston and M. M. Johnston (Earl R. Gilbert as Administrator, etc.), *Appellants*.

### SYLLABUS BY THE COURT.

Descent and Distributions—*Foster Child—Never Legally Adopted—Not an Heir of Her Foster Father*. A foster child, whose foster father failed to perform, in his lifetime, a valid contract to adopt her, is not his heir, and is not entitled to the proceeds of a benefit certificate issued by a fraternal insurance society, payable at his death to his heirs.

Appeal from Wyandotte district court, division No. 1; Edward L. Fischer, judge. Opinion filed April 5, 1924. Reversed.

*Elmer E. Martin*, and *H. E. Dean*, both of Kansas City, for the appellants.
*David F. Carson*, and *James T. Cochran*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

Burch, J.: This is a second appeal. The verdict and special findings of the jury, determining an issue of fact, were approved in *Hickox v. Johnston*, 113 Kan. 99, 213 Pac. 1060, and the cause was

remanded to the district court to make disposition of a sum of money held subject to its order. The money has been awarded to plaintiff, and contesting defendants appeal.

The action was one for specific performance of a contract by Thomas H. Johnston, to adopt the plaintiff and make her his heir. The contract had been fulfilled on the plaintiff's side, but Johnston had neglected to perform it, in his lifetime. The petition stated plaintiff was entitled to all property of which Johnston died seized, and prayed specifically for the proceeds of a benefit certificate issued by a fraternal insurance society and payable, under existing conditions, to Johnston's legal heirs. The society was made a party to the action. It admitted execution and validity of the certificate, pleaded a by-law which, under the circumstances, made the benefit payable to Johnston's legal heirs, and pleaded that proof of sole heirship had been made by Johnston's brothers and his sister. The society then tendered into court a sum which it admitted to be due, leaving the question of proper amount to be determined between the society and whomsoever was adjudged to be entitled to the money. Johnston's brothers and his sister were made parties to the action, and the petition called on them to state what interest they had in the certificate. Their answer denied existence of the contract to adopt, and stated they were Johnston's legal heirs. A trial was had to determine the issue of fact relating to existence of the contract, and the jury returned special findings of fact and a general verdict in favor of plaintiff. The formal judgment entered on this verdict was simply that plaintiff recover from defendants the costs of the case.

The contesting defendants filed a motion for judgment notwithstanding the findings of fact, and to set aside the findings of fact, which was heard and denied on February 5, 1921. They also filed a motion for a new trial, which was denied. Afterwards, and on February 5, the court made the following order:

"And it appearing to the court that the defendant, The Brotherhood of American Yeomen has tendered into court the sum of seventeen hundred seventy-eight & $50/100$ ($1778.50) dollars, being the amount claimed by said fraternal order to be due on the benefit certificate mentioned in the pleadings in this cause, it is ordered that the said amount be held by the Clerk of this court until otherwise ordered."

On February 17, 1921, the contesting defendants served notice of appeal. When the appeal was heard in this court, the record was barren of anything approaching a judgment awarding the fund in

controversy to anybody and, as indicated, the last order made was one expressly reserving it for future disposition. Plaintiff had proceeded on the theory that if she established the contract she would be entitled to the proceeds of the certificate. She had, however, no judgment in her favor expressing that conclusion of law, and awarding her the fund. Likewise, the contesting defendants had no judgment against them expressing that conclusion of law, and denying recovery by them. The fund lay in the court's treasury awaiting a final judgment determining who was entitled to it, and disposing of it accordingly.

The record does not affirmatively show that the specific legal question—Would establishment and enforcement of the contract of adoption sustain a judgment awarding the money to the plaintiff?—was presented to the court for decision by either party. The plaintiff assumed an affirmative answer to the question, and the contesting defendants did not raise it in such a manner that it can be said the court expressly ruled upon it. The demurrer to the evidence challenged sufficiency of the evidence to establish the contract. The motion for an instructed verdict was based on insufficiency of evidence. The motion for judgment, notwithstanding the verdict, was based on the specific ground the special findings showed there was no contract to adopt. The motion for new trial was general in form.

When the cause reached this court, the parties commenced a debate about what had been decided, which has continued until the present time. It is not necessary to summarize the voluminous literature on the subject. It may be observed, however, that under an assignment of error that the court overruled the demurrer to the evidence and refused a peremptory instruction to find for defendants, defendants made the following points:

"Third. If alleged contract was made it did not create the legal status of heirship, plaintiff would not thereby become an heir and as such entitled to inherit through Johnston, but only to have said contract enforced against his property. This insurance money was not a part of his estate, he had no interest in either the policy or the proceeds.

"Fourth. The policy and by-laws of the fraternal order designate that the proceeds go to the legal heirs, which status or situation the plaintiff does not occupy and could not occupy by virtue of any contract which may have been made, regardless of its terms.

"Fifth. The Legislature by Chapter 208, Laws 1917 (and this Act governs this case), said the payment of benefits should be confined to certain persons therein named and plaintiff is not within any class therein designated. This

is true even though she is Johnston's heir. By that Act the fact that a person is an 'heir' does not entitle them to receive death benefits."

In a supplemental brief filed after the oral argument, plaintiff said the only material question was whether the contract sought to be enforced was made and performed, her position being that specific performance of the contract gave her the same right to the proceeds of the certificate as if she had been a child born to Thomas H. Johnston and his wife. This position had been supported by authorities cited in the plaintiff's brief, but the brief concluded as follows:

"Some argument is presented in appellant's brief regarding the law as to fraternal insurance companies, but that is not well founded, 1st, because the contract of insurance was made long prior to 1915, and therefore the statute of 1917 is not applicable; 2nd, this is not a question now before this court. This is an appeal from the verdict of a jury approved by the trial court in which that question was not decided, but as stated in appellant's brief was left open pending the decision herein to finally determine the heir entitled to the proceeds of this policy."

When the cause came on for decision the court was obliged to determine what was before it for decision, and after full investigation, it reached the conclusion stated in the last paragraph of the former opinion (113 Kan. 102), and confined the decision to the matters stated in the syllabus.

When the opinion was filed, counsel for the respective parties disagreed as to its effect. Plaintiff contended the first paragraph of the syllabus was an adjudication of her right to the money. Defendants contended otherwise. The subject was presented to the court by petition for rehearing, and answer to the petition for rehearing, and was considered again. The court was not concerned about the plaintiff's interpretation, which was clearly wrong. It was concerned, however, about what was before it for adjudication, and having reassured itself that there was no finding, order or judgment of any kind in the record giving final expression to the conclusion, either of fact or law, that the plaintiff should be awarded the fund, the court denied the petition for rehearing.

When the cause was returned to the district court, that court found plaintiff was entitled to the money and awarded it to her, as appears by the following journal entry of its judgment:

"The court having duly considered the matter and heard the argument of counsel finds:

"1. That the judgment of this court and findings determining the existence of the contract and adjudging enforcement thereof in this case, have been affirmed by the Supreme Court of Kansas.

"2. That on July 2nd, 1923, the motion of The Brotherhood of American Yeomen for judgment on the pleadings, fully discharging it from further liability was sustained by this court, as appears by Journal Entry thereof of said date.

"3. That the plaintiff is entitled to said sum of $1,778.50, proceeds of the said beneficial certificate of the Brotherhood of American Yeomen as of date when paid into court, January 20th, 1921.

"*It is therefore considered, ordered and adjudged:* That the plaintiff, Mabel Hickox, have and the Clerk of this court be and is hereby ordered to pay to said plaintiff the said sum of $1,778.50 in his hands, being proceeds of said certificate, and that defendants, M. M. Johnston, Sadie I. Wood, J. W. Johnston and Adam D. Johnston, pay the costs of this action."

The contesting defendants appealed. Plaintiff filed a motion to dismiss the appeal, on the ground this court, upon the first appeal, adjudicated her right to the fund. The motion was passed for consideration with the merits and is now denied. The court carefully avoided making any such adjudication. It did say that without formal adoption, the contract to adopt might be made the basis of a valid claim against the estate of plaintiff's foster parents, but the proceeds of the certificate are not a part of that estate. (*Pilcher v. Puckett,* 77 Kan. 284, 94 Pac. 132.) The opinion in the Pilcher case cited *Olmstead v. Benefit Society,* 37 Kan. 93, 14 Pac. 449, in which it was said:

"The assured had no interest in the benefit resulting from his membership. In no event was it payable to him, nor could it become a part of his estate." (p. 97.)

The opinion in the Pilcher case then proceeded to give reasons for this doctrine, not adverted to in the Olmstead case. The doctrine is sound and has been approved in *Boice v. Shepard,* 78 Kan. 308, 96 Pac. 485; *Modern Woodmen v. Comeaux,* 79 Kan. 493, 101 Pac. 1, and *Filley v. Insurance Co.,* 93 Kan. 197, 144 Pac. 257.

Plaintiff contends her right to the fund in controversy was adjudicated in the district court before the first appeal was taken. That matter is *res adjudicata.* This court decided to the contrary when it was obliged to ascertain what was before it for decision in the former appeal. Besides that, the decision was correct. If the district court had been reversed for adjudging the plaintiff is entitled to the fund, it could have complained that it had rendered no such jugment.

We now come to consideration of the merits of the appeal from the judgment of the district court awarding the fund in controversy to plaintiff.

The benefit certificate was payable to Johnston's legal heirs. The plaintiff could be his legal heir under one of two indispensable conditions: First, by having been born his daughter; and second, by having been adopted. Neither status existed, and the district court erred. The principles of law involved are stated in a series of decisions, which includes *Renz v. Drury,* 57 Kan. 84, 45 Pac. 71; *Malaney v. Cameron,* 98 Kan. 620, 159 Pac. 19; *Malaney v. Cameron,* 99 Kan. 70, 161 Pac. 1180 (on rehearing), and *Ellis v. Coal Co.,* 100 Kan. 187, 163 Pac. 654. A court of equity may give relief for breach of a contract to adopt, and in case the obligor died intestate, may give relief out of his estate, measured by the statute of descents and distributions; but it cannot make one person heir of another. The legislature alone can designate who shall take by descent.

Plaintiff contends that equity regards that as done which ought to have been done; contends that those who stand in a decedent's shoes, as the contesting defendants do in this case, are estopped to urge what he could not have urged; contends for application of other equitable doctrines; and quotes from *Thomas v. Maloney,* 142 Mo. App. 193, as follows:

"Without any specific agreement to that effect, a child legally adopted will inherit from its adoptive parents in like manner as their lawful issue. . . . This being true, a contract to adopt carries the incidental right of heirship which, as in the case of a natural child, may be cut off only by the will of the adoptive parent." (p. 198.)

The same contentions were forcefully made to the court in *Malaney v. Cameron, supra.* The court has refreshed its recollection by reëxamining the brief for plaintiff in that case, who claimed under an unperformed contract of adoption. The Thomas-Maloney case was cited, together with other Missouri decisions and decisions from other states, of the same tenor. On application of plaintiff, a rehearing was granted, the status of a foster child not adopted pursuant to contract to adopt, was again considered, and the conclusion was reached that such a child is not an heir of the foster parent. The court is still of the same opinion.

The judgment of the district court is reversed and the cause is remanded with direction to award the fund in controversy to the contesting defendants.