No. 37,466

In the Matter of the Estate of Nannie Nicholson, Deceased (Sonny Brown, *Appellee*, v. Genevieve Brewer, Executrix, *Appellant*).

(204 P. 2d 602)

Opinion filed April 9, 1949.

*Justus N. Baird*, of Kansas City, argued the cause, and was on the briefs for the appellant.

*William E. Carson*, of Kansas City, argued the cause and was on the briefs for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was a proceeding commenced by Sonny Brown to establish a demand against the estate of Nannie Nicholson, deceased. From a judgment in his favor, her executrix appeals.

Nannie Nicholson died in August, 1945. At a date not disclosed by the abstracts, her will was admitted to probate and an executrix was appointed. On September 18, 1946, Sonny Brown, on occasion referred to as Sam Brown, filed his claim in the amount of $3,600 for labor performed and materials furnished from April 8, 1943, to July 31, 1945, in making improvements on premises owned by the deceased, described as 631 Winona avenue, Kansas City, Kan., and for two years taxes paid, under an oral contract with the deceased to reimburse him. The result in the probate court is not disclosed but there was an appeal to the district court. In that court the executrix filed an answer containing a general denial, and allegations that Brown married the daughter of the decedent on May 6, 1943, and immediately moved into the home of Nannie Nicholson and

lived with her and her daughter as a member of the family during the life of Nannie Nicholson, who died August 1, 1945, and an allegation the claim was barred by the statute of limitations. The matter was tried by a jury. At the conclusion of the evidence the executrix moved for an order requiring the claimant to elect whether he relied upon an express or implied contract, and claimant elected to stand on an express contract. Under instructions, of which no complaint is made, the jury returned a verdict in favor of the claimant for $1,350 and answered five special questions as follows:

"1. Did Sam Brown pay any taxes on the property owned by Nannie Nicholson at 631 Winona Avenue, Kansas City, Kansas? A. Yes.

"2. After the marriage of Sam Brown and Ella Richards on May 6, 1943, did Nannie Nicholson request him not to buy a place? A. Yes.

"3. Was the house and buildings on the property known as 631 Winona Avenue, at the time of the marriage of Ella Richards, daughter of Nannie Nicholson, to Sam Brown, in need of repair? A. Yes.

"4. Was there an agreement between Nannie Nicholson, deceased, and the claimant, Sam Brown, that Sam Brown was to furnish money and material in making improvements on the property owned by Nannie Nicholson, deceased? A. Yes.

"5. If you answer the preceding question 'yes,' then state if said agreement provided that Sam Brown was to receive compensation out of the property owned by Nannie Nicholson or her estate for all money and anything furnished by him in making said improvements? A. Yes."

No motion was made to set aside any of the above answers. The executrix did, however, file her motion for judgment in her favor and against claimant, notwithstanding the verdict of the jury, and her motion for a new trial. Both of these motions were denied and she appealed to this court.

Thereafter the parties entered into a stipulation "for the purpose of saving expense in transcript and abstract on this appeal" as follows, it then being stated that claimant produced evidence as to labor performed and materials furnished in the total amount of $3,512.89, that all was used in making improvements on the premises owned by deceased between May 1, 1943, and May 1, 1945, "and during all of said time the said Minnie (Nannie) Nicholson lived in said premises and said labor was performed and material furnished with her knowledge and consent by claimant." That Sam (Sonny) Brown resided in said premises from May 6, 1943, until after the death of Nannie Nicholson, and that the stipulation, together with evidence shown by the transcript is all of the evidence necessary to determine the issues raised on the appeal.

Appellant's specifications of error are indefinite in nature, and are not followed out in her brief, which is confined solely to a discussion whether the appellee's evidence was sufficient to prove an enforceable contract. Ignoring any rule that judgment having been rendered in favor of appellee, any conflicts in the evidence are to be resolved in his favor, or any rule that the answers returned by the jury to special questions must stand in the absence of any attack thereon, and also the post-trial stipulation mentioned above, appellant states the facts in such manner that all conflicts are resolved in her favor. In her argument she comments on the fact there must be two parties to a contract, and that it must be certain in its terms, and supported by a consideration, and then argues that Nannie Nicholson did not agree to pay Brown anything; that Brown did not agree to do anything, and that the consideration, if there was one, was for things done in the past and there was no evidence the contract was to be retroactive in effect. The basis for this last contention is that the contract was not made until May, 1945. It is true one witness, at one time, did fix that as the date of a conversation with Nannie Nicholson. The same witness stated at other times the date was May, 1943, but it might have been 1943 or 1944. The husband of this witness fixed the date positively as May, 1944. Appellant directs our attention to *Griffith v. Robertson*, 73 Kan. 666, 84 Pac. 748, where it was said that in compliance with a public policy to protect and preserve the relations which belong to a home and the family fireside, the law presumes services rendered by one member to another to be from considerations of filial affection and duty. That case further holds, however, that such a presumption of fact may be overcome and a contract, if any existed, may be proved by any competent evidence; that it is not essential that there be formal offer and acceptance, but in the absence of more direct evidence, the fact may be established by circumstances. It may here be remarked the above is not an isolated statement of the law applicable. See *Logston v. Needham*, 138 Kan. 439, 26 P. 2d 443; *Johnson v. Lander*, 140 Kan. 329, 36 P. 2d 1006; and *Nelson v. Peterson*, 147 Kan. 507, 78 P. 2d 20, and cases cited. In the last cited case it was said:

"In order to recover for the services, the plaintiff must affirmatively show either an express contract for remuneration existed, or that the circumstances under which the services were rendered were such as exhibited a reasonable and proper expectation that there would be compensation (citing cases)." (l. c. 510.)

In view of the stipulation above made as to what the evidence showed, we shall make only a brief reference to the evidence. A. W. Spiller, a minister, testified as to the condition of the house and the improvements made on it by Sonny Brown, and that in May, 1944, he had a conversation with Nannie Nicholson in which she said that Sonny was talking about buying a house and she prevailed on him not to do so; that he spent money on her house and she wanted him to stay there and enjoy himself and if anything happened to her the house would be his. Mrs. Spiller, testifying to what was probably the same conversation, stated that Nannie Nicholson, Sonny Brown and Ella Brown were at her house for dinner and that Mrs. Nicholson spoke about Sonny Brown's fixing up the house; that he was talking about buying a home and that she didn't want him to; and "I want you to stay here and live it out, and get your pay out of this, and if I die this home is yours and Ella's, and I do want you to get some of your money out of it." Mrs. Nicholson also told the witness that she was behind with her taxes and that Brown paid them.

Under the test fixed by our decisions, the evidence supported the jury's answers to special questions, and its general verdict, and the judgment of the trial court.

No error appearing, the judgment of the trial court is affirmed.