No. 42,451

In the Matter of the Estate of A. J. Brown, Deceased. BESSIE W. BROWN AXTON, *Appellant,* v. DALLAS W. KNAPP, Administrator, RALPH ALTER and GERALDINE ANDERSON, *Appellees.*

(368 P. 2d 27)

Opinion filed January 20, 1962.

*A. R. Lamb,* of Coffeyville, argued the cause, and *Paul A. Lamb,* of Coffeyville, was with him on the briefs for the appellant.

*Bert J. Vance,* of Garden City, argued the cause, and *A. M. Fleming,* of Garden City, *Charles H. Fleming,* of Scott City, and *Clement H. Hall,* of Coffeyville, were with him on the briefs for the appellees Ralph Alter and Geraldine Anderson.

The opinion of the court was delivered by

WERTZ, J.: This was an action by plaintiff Bessie Ally, now Bessie Ally Brown Axton, to construe the terms of an antenuptial contract entered into between her and A. J. Brown, now deceased, and to recover against Brown's estate money due her under the terms of the contract. The pertinent facts follow.

In April, 1943, A. J. Brown, the deceased, then seventy-two years of age, a retired railroad employee, successful farmer and businessman, and Bessie Ally, a well-to-do widow, since remarried, plaintiff (appellant), then fifty years of age, were contemplating marriage. Each had had one prior marriage. Brown had two grandchildren, Ralph Alter and Geraldine Anderson (appellees), children of his deceased daughter; Bessie Ally had one daughter. At the time of the contemplated marriage each of the parties owned a considerable amount of both personal and real property, and, desiring to protect their separate property for the benefit of their respective children, sought the legal services of Mr. Dallas Knapp to prepare an antenuptial contract governing such rights. The contract was prepared, the parties signed it, and on April 28, 1943, they were married.

The pertinent part of the contract provided:

"That each of them, the said A. J. Brown and Bessie Ally, hereby agree, covenant and declare it to be his and her desire that during their marriage each of them shall be and continue completely independent of the other, as regards the enjoyment and disposal of all property which each of them may own at the commencement of said marriage and each of them hereby agrees, and covenants with the other, in view and in consideration of said proposed marriage that so far as is legally possible by their private acts and agreements, all of the property belonging to each or either of them at the commencement of the marriage shall be held and be enjoyed by him or her and be subject to his or her disposition as his or her separate property in the same manner as if said proposed marriage had never been celebrated.

"THE SAME PARTIES MUTUALLY AGREE that in the event any property is accumulated or acquired after said marriage by the parties hereto, then that said property shall be held, owned and enjoyed by said parties as joint tenants and not tenants in common, and upon the death of either all of said property remaining so accumulated or acquired, shall pass to the survivor.

". . . That in the event the said Bessie Ally survives the said A. J. Brown and the parties hereto are living together as husband and wife at said

time, then that the said Bessie Ally shall be paid the sum of $1,000.00 out of the estate of A. J. Brown, and with this exception, and also the exception relative to acquired or accumulated property after said marriage, the parties hereto further expressly agree and covenant to and with each other, that upon the death of either, the survivor shall not have and will not assert any claim, interest, estate or title under the laws of any state because of such survivorship in or to the property, real, personal or mixed, of which such deceased party shall die seized or possessed, and such survivor hereby relinquishes the heirs, administrators, executors and assigns of such deceased party and any all of his or her claim, distributive share, interest, estate or title that he or she would be entitled to as the surviving husband or wife respectively, . . ."

After their wedding the parties lived together as husband and wife until the death of A. J. Brown on December 10, 1958. Mr. Dallas W. Knapp was appointed administrator of Brown's estate. Bessie Ally Brown, now Axton, hereinafter referred to as Bessie, filed her claim in the probate court against the estate of A. J. Brown asking the court to construe the antenuptial contract and to determine the interest of the parties in the property held by the administrator. From an adverse judgment in that court Bessie appealed to the district court. She filed her petition asserting that during their more than fifteen years of marriage A. J. Brown accumulated or acquired property valued at approximately $50,000 which was held, owned and enjoyed by them as joint tenants and that the same passed to her absolutely under the provision of the contract that ". . . upon the death of either all of said property remaining so accumulated or acquired, shall pass to the survivor." The petition further asserted that the court should construe the contract and instruct the administrator to deliver to plaintiff the property to which she is entitled. Whereupon defendants filed a motion to require plaintiff to make her petition more definite. The trial court sustained this motion. In compliance with the court's ruling Bessie filed an amended petition amplifying her original petition, and defendants answered by way of a general denial, affirmatively asserting that during the marriage relations Brown accumulated no property but in fact had less than at the time of the marriage, that the parties never created a joint tenancy and at the time of his death Brown had no property in joint tenancy with Bessie.

The case was tried to the court on the issues thus joined. The parties stipulated to the date of the marriage; that they had lived together as husband and wife until the death of Brown; that the bank checking account records of Brown be introduced in evidence;

that the safety deposit box rental contract entered into on November 11, 1943, between the First National Bank of Coffeyville and A. J. Brown and Ralph Alter, defendant, as joint tenants with right of survivorship, be considered in evidence; that in the safety deposit box was found $19,800 in twenty, fifty and one hundred dollar bills, many being old bills of the series of 1928, '29 and '34; and that the income tax records of Mr. and Mrs. Brown from 1943 to 1958, inclusive, be introduced in evidence.

After reviewing the evidence the court found, in pertinent part, that at the time the parties were married both were owners of city and farm property; that Brown was drawing a monthly railroad retirement pension of $44.84.

The court further found:

"X. A. J. Brown and Bessie Brown handled their personal and real property separately at all times during their marriage. They kept their bank accounts entirely separate. They did not place any of their property in joint tenancy ownership, either real or personal. A. J. Brown maintained a separate lock box and Bessie Brown had no control over the contents of this lock box. She did not have the right to enter it. Bessie Brown, during the marriage, explained to the tax accountant who completed the tax returns for many years for the parties that her property would go to her daughter and A. J. Brown's property would go to his grandchildren. They kept their incomes separately. They paid their income taxes on their separate incomes and in all ways handled their property separately from the time of their marriage until the date of A. J. Brown's death. There was no property accumulated by the parties in joint tenancy after the marriage.

"XI. The real estate inventoried in the estate of A. J. Brown was owned by the decedent prior to his marriage to Bessie Ally. At the time of his marriage to Bessie Ally, A. J. Brown was 72 years old and receiving a small monthly pension.

"XII. That the so-called 'account books' of A. J. Brown, which were introduced into evidence, are not complete and did not give or purport to give a complete record of the financial transactions of A. J. Brown. No evidence was introduced concerning the amount of the living expenses of A. J. Brown and Bessie Brown after their marriage except such incomplete and fragmentary evidence as is contained in said 'account books.'

"XIII. That at the time of the death of A. J. Brown, there was no property remaining 'so accumulated or acquired' after the marriage of A. J. Brown and Bessie Brown and there was no property in joint tenancy with Bessie W. Brown.

"XIV. The evidence does not disclose when A. J. Brown became the owner of the currency found in his lock box at the time of his death. The evidence does disclose that A. J. Brown, for many years prior to his marriage to Bessie Ally, was in the habit of keeping large sums of cash and making loans of large sums of cash, requiring that such loans be repaid to him in cash.

"XV. There is no evidence that Bessie Brown ever assumed possession of or control over any part of A. J. Brown's property, either real or personal.

There is no evidence that any property of A. J. Brown, either real or personal, was placed in joint tenancy ownership by A. J. and Bessie Brown.

"XVI. The evidence does not disclose the financial worth of A. J. Brown at the time of his marriage to Bessie Ally."

The court concluded as a matter of law that the evidence did not disclose what, if any, property was accumulated by either party after the marriage; that the evidence did disclose that the parties did not treat or handle any of the property of Brown as jointly owned property. The court further concluded:

"IV. That the plaintiff had the burden of proving the accumulation and acquisition of property by the parties after this marriage and plaintiff has failed in her proof."

The court also concluded that Brown had used the safety deposit box in the First National Bank for his own purposes long before the marriage and had considerable money on hand in the form of cash, and continued to do so to the day of his death; that shortly after the marriage Brown created a joint tenancy with his grandson (Alter) as to the afore-mentioned safety deposit box, which was in keeping with the general understanding of the parties under the terms of the contract. The court further concluded that none of the property or monies left by Brown at the time of his death ever became a part of any money or property accumulated or acquired after said marriage by the parties, there being no showing that any such property so accumulated remained at his death.

The trial court denied plaintiff's claim and ordered judgment in favor of the administrator. From an order overruling plaintiff's post-trial motion, she appeals.

It is noted that in her brief plaintiff makes no contention that the findings of fact are not supported by evidence. The question therefore remains as to whether the facts found by the trial court warrant the conclusions of law announced and the subsequent judgment. (*Davidson v. McKown,* 157 Kan. 217, 139 P. 2d 421, 6 A. L. R. 2d 1.) It may also be stated that our review of the record discloses substantial, competent evidence to support the findings of fact.

At the outset it may be stated that the rules governing the construction of contracts generally are applicable to the construction of antenuptial contracts. A claim asserted by one of the parties to an antenuptial contract against the estate of the other party, which if allowed would reduce the amount of assets which would otherwise be distributed to his heirs or legatees, constitutes a de-

mand against the estate of the deceased party. (*In re Estate of Hill*, 162 Kan. 385, 176 P. 2d 515.) The burden of proving a claim against a decedent's estate is on the claimant and the claim must be established by evidence clear and convincing to the triers, or trier, of the facts; and where the findings of fact are not disputed or where they are supported by substantial, competent evidence they will not be disturbed upon appeal. (*In re Estate of House*, 164 Kan. 610, 192 P. 2d 179; *In re Estate of House*, 164 Kan. 613, 192 P. 2d 177.)

The gist of plaintiff's contention is that the court improperly construed the contract. Plaintiff asserts that all property or income received by either party subsequent to the marriage was to be held, owned and enjoyed by the parties as joint tenants, and that inasmuch as Brown's income tax returns showed his gross receipts from rentals, pension and interest to amount to some forty-eight thousand dollars over a period of fifteen years of married life that she is entitled to that amount out of the estate; that upon her showing of such gross receipts the burden shifted to the defendants, the administrator and the heirs, to show that the gross amount was not property remaining, accumulated or acquired during the marriage relations. We cannot agree with plaintiff's contention. As above stated, the burden of proof was on the plaintiff to prove her claim, and that burden did not shift until she had made out a *prima facie* case by showing what property of the estate during the marriage relations had actually been acquired, accumulated and remained at the death of Brown. No evidence was produced by plaintiff showing the net worth of Brown at the time of their marriage. The evidence does disclose that prior to the marriage he was a man of means and kept large sums of money in a safety deposit box, made loans, and requested repayment in cash. The money in the First National Bank in the amount of $19,800 was in a joint safety deposit box with his grandson Ralph Alter. Plaintiff would have the court treat every dollar of deceased's gross income as an accumulation and property remaining under the terms of the contract without allowing anything for taxes, either real estate or income, living expenses, repairs, or amounts spent for necessities of life as the head of a family.

The burden was upon the plaintiff to produce evidence to make out a *prima facie* case that the property and monies in the estate of the deceased were accumulated or acquired after the marriage

under the terms of the contract, whether held by them jointly or separately. In this she failed, and the court properly held that she was not entitled to recover on her cause of action.

The plaintiff complains that the trial court erred in interpreting the contract in holding that the accumulations referred to in the contract were only applicable to property acquired by the parties acting together and not independently of each other. Assuming the court erred in this interpretation of the contract, it becomes immaterial inasmuch as plaintiff has failed to prove that any property was accumulated or acquired by the parties, either acting separately or collectively, during the marriage.

Plaintiff contends that the contract was against public policy and also void because of Brown's failure to disclose all of his assets at the time of the execution of the contract. There is no merit to these contentions. The case was tried in the court below and presented to this court on the theory that plaintiff's action was one to construe the antenuptial contract and to set over to her the amount due thereunder. Issues were joined on this theory, the case was tried, and the court made its findings of fact and conclusions of law and entered judgment on the issues as framed.

The two contentions were raised for the first time on plaintiff's motion for a new trial, thereby shifting her position after a judgment had been rendered. Where the parties to an action mutually adopt a theory in the trial court and fully try their controversy in accordance therewith, this court will not on appeal adopt another theory and decide the case in accordance with the new theory, but will affirm or reverse as may be required in accordance with the lack or presence of error shown by the record upon the theory adopted by the parties in the trial court. (*Potwin State Bank v. Ward*, 183 Kan. 475, 488, 327 P. 2d 1091, 80 A. L. R. 2d 166.) Under the doctrine of election of remedies, when a party having the right to choose between two inconsistent remedies, such as affirmance or rescission of a contract, deliberately elects to affirm, he is precluded thereafter from making a new election and is estopped from relying upon rescission of the contract for either affirmative or defensive purposes. A choice of two inconsistent remedies is determined by the commencement of an action and the filing of such action gives finality to the election. (*Davidson v. McKown*, 157 Kan. 217, 139 P. 2d 421, 6 A. L. R. 2d 1.)

Plaintiff next contends that the court erred in requiring her to file pleadings setting forth her contentions and basis of recovery. This is an appeal from the probate court to the district court, and under the provisions of G. S. 1949, 59-2408 the district court may require pleadings to be filed or amended. (*In re Estate of Shirk*, 186 Kan. 311, 350 P. 2d 1; 3 Bartlett Kansas Probate Law and Practice [Rev. Ed.] § 1578.) The court did not err in this respect.

Plaintiff further contends that the court erred in refusing her request to comply with our rule No. 52 (G. S. 1949, 60-3827) which provides that in all cases tried before the court without a jury, when either party shall urge the application of a presumption of law, the trial court, upon timely written request of the party setting forth the presumption of law which the party contends applies, shall file with the clerk, either separately or as part of its findings of fact and conclusions of law, a written statement as to whether in deciding the case it did or did not give effect to the presumption of law contended for. Suffice it to say that plaintiff failed to make a timely request to the court or file a written request setting forth the presumption of law which she contended applied prior to the trial and the rendition of judgment; and, as a matter of fact, she did not do so until after she had filed her motion for a new trial. Her request comes too late.

Other contentions raised by the plaintiff have been considered and found to be without substantial merit.

We are of the opinion the findings of the trial court were amply sustained by the evidence, the findings sustained the conclusions of law and the judgment, and the case must be affirmed.

It is so ordered.