No. 60,242

In the Matter of the Estate of WILL FLORENCE ROBBINS, Deceased.
(738 P.2d 458)

Opinion filed June 12, 1987.

*Donald T. Taylor,* of Scott & Daily, Chartered, of Kansas City, argued the cause, and *LaVone A. Daily,* of the same firm, was on the briefs for appellant.

*Hosea Ellis Sowell,* of Kansas City, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The plaintiff, Nancy S. Bohman, appeals the decision of the Wyandotte County District Court which held that Kansas does not recognize the doctrine of equitable adoption, and that, therefore, Bohman was not the adopted daughter of the deceased. She also appeals the decision denying her claim against the estate for expenses incurred while caring for the deceased during the deceased's last illness.

Will Florence Robbins died intestate December 28, 1985, at the age of 75. She had been a prominent member of the Kansas City community and had been the recipient of numerous professional and civic honors. Her first husband, Harold E. Robbins, died in 1968. Mrs. Robbins later married and subsequently divorced Adolphus Hudgins. Both marriages were childless.

Nancy S. Bohman was born on January 23, 1926, in Lexington,

Mississippi, the daughter of Theodosia and Arthur Smith. In 1933, Mrs. Smith left her husband and moved with Nancy and her other two children to Kansas City, Kansas. In 1934, Nancy met Will Florence and Harold Robbins while attending the YWCA in Kansas City. Through the ensuing years, Nancy had a continuing close relationship with Mrs. Robbins.

Upon Robbins' death, Nancy Bohman returned to Kansas City to make funeral arrangements. The funeral took place on December 31, 1985. A petition for the appointment of an administrator was filed. The petition stated that the deceased was survived by Ewell Clemons and Kneeland Clemons, cousins, and that Nancy Bohman was an interested party.

The court appointed Ewell Clemons as administrator. Clemons filed an inventory and valuation of the estate, which was valued at $223,321.23. Nancy Bohman filed a claim against the estate for $9,201.86. In her affidavit, Bohman stated that she was the "God-daughter" of Will Florence Robbins and that the amounts claimed against the estate were for services she performed between 1981-85. The services included telephone calls, travel to Kansas City, monies expended accompanying Robbins on a cruise, and salary/time loss.

After Ewell Clemons filed a petition for final settlement of the estate, Nancy Bohman filed a petition for determination of heirship, alleging that she was the adopted daughter of Will Florence Robbins. The petition was filed after the four-month period prescribed by the nonclaim statute, K.S.A. 1986 Supp. 59-2239, had expired. Nancy claimed that the Robbinses had proposed an adoption of Nancy to her mother in 1940, that the proposal had been accepted, and that she, Nancy, thereafter moved into the Robbins home and was treated in all respects as the Robbins' natural daughter. Nancy also alleged that Will Florence Robbins had told her that she would leave a will through which Nancy would inherit.

At the hearing on plaintiff's motion for determination of heirship, Nancy Bohman informed the court that under the doctrine of equitable adoption she was the adopted daughter of the deceased. The court then ruled as a matter of law that the State of Kansas does not recognize the doctrine of equitable adoption, and that Nancy, therefore, could not have been equitably

adopted. After hearing the evidence on Bohman's claim for reimbursement for services rendered the deceased during her last illness, the court denied her claim.

Bohman argues that the district court erred in denying her $9,201.86 claim for expenses and monies expended on behalf of the deceased.

In order to recover for services rendered a deceased, the claimant must affirmatively show either an express contract for remuneration existed, or that the circumstances under which the services were rendered were such as exhibited a reasonable and proper expectation that there would be compensation. *In re Estate of Nicholson*, 167 Kan. 14, 16, 204 P.2d 602 (1949) (quoting *Nelson v. Peterson*, 147 Kan. 507, 78 P.2d 20 [1938]). Such a claim, in order to be valid, need not be based on an express contract but may rest on an implied obligation to pay arising from facts and circumstances. *In re Estate of House*, 164 Kan. 610, Syl. ¶ 2, 192 P.2d 179 (1948). The burden of proving a claim against a decedent's estate is on the claimant and the claim must be established by evidence clear and convincing to the triers, or trier, of fact. *In re Estate of Brown*, 189 Kan. 193, Syl. ¶ 4, 368 P.2d 27 (1962).

At the hearing on her claim against the estate, Bohman testified that she had no agreement with the deceased to be reimbursed for her expenses, nor did she want to be reimbursed on the basis of her services to Robbins. It was her "impression" that a sum would be forthcoming from the administrator because she was the adopted daughter of the deceased. Based on Bohman's statements, neither an express nor implied contract existed between the decedent and Bohman to pay for services rendered. The trial judge properly denied her claim against the estate for services and expenses incurred.

Bohman next argues that prior Kansas law has established a right to enforcement of an unperformed contract to adopt. She contends that because of an oral contract between Robbins and Bohman's natural mother, she is the adopted daughter of Will Florence Robbins and, as such, is entitled to inherit from Robbins' estate under the doctrine of equitable adoption.

The English common law followed the maxim that "only God, not man, can make an heir." The concept of adoption of children

originated in the Roman and civil law systems and was unknown to English jurisprudence. In the United States, both the right to adopt and the legal consequences of adoption are dependent upon state law. Courts in nearly 30 states have applied the doctrine of equitable adoption to allow a child to inherit from his or her "parents" despite the total lack of formal adoption proceedings. See Annot., 97 A.L.R.3d 347. See generally Bailey, *Adoption "By Estoppel"*, 36 Tex. L. Rev. 30 (1957); Note, *Equitable Adoption: They Took Him Into Their Home and Called Him Fred*, 58 Va. L. Rev. 726 (1972); Comment, *Equitable Adoption: A Necessary Doctrine?*, 35 S. Cal. L. Rev. 491 (1962); Comment, *Virtual Adoption and Rights of Inheritance*, 21 Wash. & Lee L. Rev. 312 (1964). These state courts have recognized that when an individual who is legally competent to adopt a child enters into a valid contract to adopt, and there is consideration supporting the contract in the form of past performance falling short of the statutory requirements for adoption, the contract to adopt may be enforced in equity to the extent of allowing the child to occupy the status of a legally adopted child for certain purposes.

In the most common case, the natural parents give up their child to foster parents who agree to adopt the child. The child is reared in the foster parents' home and assumes the de facto status of an adopted child. However, statutory adoption procedures are never carried out. Upon the death of the foster parents, the child claims an inheritance from the estate. Other courts, in attempting to avoid harsh results by the application of the intestacy statutes, have allowed the child to inherit, applying general equitable principles, principles of estoppel, or general contract law. The courts reason that one who is legally competent to adopt another as his child may enter into a valid and binding contract to do so, and if such contract is not performed by the promisor during his lifetime, it may be enforced in equity against his estate at the instance of the intended adoptee. 2 Am. Jur. 2d, Adoption § 13, pp. 870-71.

Those jurisdictions which have refused to recognize the doctrine of equitable adoption have based their decisions on reluctance to interfere with legislative decisions. The right of any person to base his claim of inheritance upon an oral agreement

for adoption is a legislative matter, and in the absence of legislation authorizing the enforcement of an oral contract alleged to have been made prior to the death of a property owner, courts should not judicially create such a doctrine. *Ladd v. Estate of Kellenberger*, 64 N.C. App. 471, 307 S.E.2d 850 (1983), *aff'd* 314 N.C. 477, 334 S.E.2d 751 (1985). See *Wilks v. Langley Adm'r*, 248 Ark. 227, 451 S.W.2d 209 (1970); *In re Est. of Fox*, 164 Ind. App. 221, 328 N.E.2d 224 (1975); *Clarkson v. Bliley*, 185 Va. 82, 38 S.E.2d 22 (1946).

We do recognize that under proper facts and circumstances an equitable contract can be enforced as a claim against the estate of a deceased. We have held that where a claimant has performed services under an oral contract during the life of a decedent and as consideration for such services the decedent has promised to leave specific property at death to the claimant, at the death of the promisor, the claimant may file a claim against the estate for specific performance of the contract. In the event the promisor conveyed the property promised prior to death, making specific performance of the contract impossible, the claimant is entitled to recover in *quantum meruit* for the reasonable value of the services rendered during the life of the promisor. *In re Estate of Ray*, 180 Kan. 634, 306 P.2d 190 (1957). In order to enforce an equitable contract against the estate, that claim, like all other claims, must be filed within the period prescribed by the non-claim statute, K.S.A. 1986 Supp. 59-2239.

This court has considered contracts for adoption on several occasions. In each case we have declined to recognize the doctrine of equitable adoption, but have stated that an individual who has no right to take as an heir may under proper facts and circumstances claim under an equitable contract and seek damages or specific performance against the promisor's estate.

In *Malaney v. Cameron*, 99 Kan. 70, 161 Pac. 1180 (1916), plaintiff brought an action for ejectment and to recover an interest in land to which she maintained she was entitled by virtue of an unperformed adoption agreement. The court held that, at most, the agreement to adopt between plaintiff's father and the deceased gave her a right to assert a contract claim against the estate, but could not convey upon plaintiff the status of "heir." The mere contract to adopt is not itself sufficient to make the

child a legal heir of the promisor, because the right to take as an heir exists only by operation of law. 99 Kan. at 71-72.

In *Hickox v. Johnston*, 113 Kan. 99, 213 Pac. 1060 (1923), 27 A.L.R. 1322, plaintiff brought an action for specific performance of a contract to adopt between plaintiff's mother and the Johnstons. This court again recognized that one could not be adopted until the necessary legal steps had been completed. While one could not claim by right of inheritance under such a relationship, one could establish a contract for an adoption and enforce the rights of a child against the estate of the foster parents. 113 Kan. at 102.

At issue in the *Hickox* case was the disposition of insurance proceeds from a benefit certificate issued by the Brotherhood of American Yeomen and payable to decedent's legal heirs. The case was remanded to the district court and, after the proceeds were awarded to plaintiff, defendants appealed again. In *Hickox v. Johnston*, 115 Kan. 845, 224 Pac. 905 (1924), in an opinion by Justice Burch, the court reaffirmed that a court of equity could give relief for a breach of a contract to adopt. Where an obligor dies intestate, the court under equitable principles may give relief out of the estate, measured by the statute of descents and distributions; but it cannot make one person an heir of another. One can be a legal heir entitled to inherit as a child under two circumstances: (1) having been born the natural child, or (2) having been legally adopted. 115 Kan. at 850.

Our recognition of "equitable adoption" would open the doors of the courthouse for individuals claiming as the equitably adopted child to contest the adoptive parent's will, to bring actions for wrongful death of an adoptive parent, to claim life insurance or death benefits due the heirs of a deceased parent, and to claim support from the adoptive parent as well as the right to inherit under the law as any natural or statutorily adopted child. Persons claiming to be the parent of an "equitably adopted" child could also obtain legal status and the rights of a parent.

Rather than open our courts to the various claims available under "equitable adoption," we again decline to recognize this doctrine. The right to take as an heir exists only by grant of the legislature. Where proper facts and circumstances exist, an indi-

vidual who has no right to take as an heir may seek damages or specific performance of an equitable contract against the deceased promisor's estate. The request to enforce an equitable contract must be filed as a claim in the deceased's estate within the period prescribed by the nonclaim statute, K.S.A. 1986 Supp. 59-2239.

Affirmed.