(772 P.2d 278)
No. 62,522

In The Matter of the Marriage of SYLVIA K. ROSS (n/k/a Sylvia K. O'Brien), *Appellee*, and ROBERT LEWIS ROSS, *Appellant*, and R.A.R., a minor child, by and through his Guardian ad Litem, *Appellee*, v. CHARLES ALLAN AUSTIN, *Appellant*.

Opinion filed April 14, 1989.

*N. Trip Shawver*, of Wichita, for appellant Robert Lewis Ross.

*Peter C. Hagan*, of Helsel, Hagan & Macias, of Wichita, for appellant Charles Allan Austin.

*Peter John Orsi, II*, of Wichita, for appellee Sylvia K. O'Brien.

*Lois A. Lynn*, of Wichita, guardian ad litem.

Before REES, P.J., DAVIS and LARSON, JJ.

LARSON, J: Robert Lewis Ross and Charles Allan Austin appeal the district court's determination that Charles is the biological father of R.A.R., a minor child born November 6, 1982, to Sylvia K. O'Brien and Robert during their marriage.

In January of 1984, Sylvia sued Robert for divorce, alleging him to be the father of R.A.R. The divorce decree awarded custody of R.A.R. to Sylvia, granted Robert visitation rights, and ordered payment of child support. Robert subsequently obtained joint custody of R.A.R. in November of 1985.

In August of 1987, Sylvia, pursuant to the Kansas Parentage Act (K.S.A. 38-1110 *et seq.*), filed a petition alleging Charles is the biological parent of R.A.R. Contemporaneous with this filing, Sylvia asked for the appointment of a guardian ad litem for R.A.R. and requested that all parties be compelled to submit to blood testing. Lois A. Lynn was subsequently appointed guardian ad litem.

Charles and Robert moved to strike Sylvia's petition on the theory of res judicata and equitable estoppel. In September of 1987, the guardian ad litem filed a separate paternity action on the basis of Sylvia's affidavit and also filed a motion for blood testing.

On October 19, 1987, the trial court dismissed Sylvia's action but directed the guardian ad litem to proceed. The court, without an evidentiary hearing, sustained the guardian ad litem's motion for blood testing.

A hearing was held on April 28, 1988, on the guardian ad litem's petition for paternity determination. Charles' motion to dismiss the paternity action for failure of the court to determine the best interests of the child, was denied. The trial court stated it had previously been determined it was in R.A.R.'s best interests for his biological father to be determined.

The trial court limited the testimony to the determination of biological parentage of R.A.R. and would not permit Robert or Charles to introduce evidence relating to R.A.R.'s best interests.

The results of the blood test were admitted into evidence over Robert's and Charles' objections. Sylvia admitted that near the conception time of R.A.R. she had engaged in sexual intercourse with both Robert and Charles. When R.A.R. was born, Sylvia decided that Robert was the father.

Sylvia stated she began to suspect Charles was the biological father due to physical characteristics of R.A.R. when he reached the age of three and one-half years. Sylvia then informed both Robert and Charles of the possibility that Charles was the father. Robert continued to care for the child in the joint custody arrangement and paid R.A.R.'s child care expenses.

Sylvia testified she had asked Charles whether he would be willing to consent to the adoption of R.A.R. by Sylvia's present husband if Charles were determined to be the biological father.

Charles was determined by clear and convincing evidence to be the biological father of R.A.R. The possibility of Robert being the biological father of R.A.R. was precluded by the blood tests. Sylvia's motion regarding child support, custody, and visitation was continued, with visitation between Robert and R.A.R. ordered to remain unchanged.

In May of 1988, after hearing statements and arguments from counsel, the court granted Sylvia's motion for child support to be paid by Charles; denied Charles' motion to pay part of the support to Robert; denied Sylvia's motion for cessation of visitation between R.A.R. and Robert; found Robert stands in loco parentis; and maintained the joint custody between Robert and Sylvia over Sylvia's objection.

Robert and Charles appeal from the finding of paternity. Sylvia's appeal from continuation of the existing custody order during the pendency of this appeal has apparently been abandoned since she filed only an appellee's brief.

Robert and Charles both allege on appeal that the court erred in excluding evidence concerning the best interests of the child and in proceeding without a hearing to determine that issue. Robert separately alleges: (1) Sylvia is equitably estopped from denying his paternity; (2) the determination of parentage made at the time of the divorce is res judicata; (3) Robert, under the facts in this case, is an "equitable parent"; (4) the court should determine there has been an equitable adoption; (5) the child

should not be an active party to the consideration of equitable adoption, adoption by estoppel, or equitable parenthood; and (6) the court erred in admitting the blood tests.

*Did the court err in excluding evidence concerning the best interests of the child and proceeding without a hearing to determine that issue?*

K.S.A. 38-1115 of the Kansas Parentage Act in part provides:

"(a) A child whose paternity has not been determined, or any person on behalf of such a child, may bring an action:

"(1) At any time to determine the existence of a father and child relationship presumed under K.S.A. 38-1114 or

"(2) at any time until three years after the child reaches the age of majority to determine the existence of a father and child relationship which is not presumed under K.S.A. 38-1114."

In the instant case, Robert is the presumed father of R.A.R. but this presumption may be rebutted as provided in K.S.A. 38-1114:

"**Presumption of paternity.** (a) A man is presumed to be the father of a child if:

"(1) He and the child's mother are, or have been, married to each other and the child is born during the marriage . . . .

. . . .

"(b) A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man."

The Kansas Parentage Act provides the court shall appoint a guardian ad litem to represent the minor child if the court finds that the interests of the child and the interests of the petitioner differ. In any other case, the court may appoint such a guardian ad litem. K.S.A. 38-1125(b).

The only reference to the best interests of the child in the Kansas Parentage Act is found in K.S.A. 38-1121(c), which states in part: "The court shall enter such orders regarding custody and visitation as the court considers to be in the best interest of the child." This section relates to the judgment or order of the court determining the existence or nonexistence of the parent and child relationship and allows for issuance of orders of support under criteria similar to those found in domestic actions.

In support of their contention that a paternity determination is not always in the child's best interests, Charles and Robert cite *McDaniels v. Carlson*, 108 Wash. 2d 299, 738 P.2d 254 (1987). The Supreme Court of Washington outlined considerations for

the rights of the child, the parents, and the state under the Uniform Parentage Act. In *McDaniels*, the paternity action was filed by a party alleging he was the father of the child born during the marriage of the mother and the respondent. Both men had developed strong bonds with the child. 108 Wash. 2d at 301. The court in *McDaniels* ruled it was in the best interests of the child for the paternity action to proceed, stating that continuity of established relationships is a key consideration in determining whether allowance of a paternity action by one outside the present family is in the child's best interests. The court stated that the trial court should consider the stability of the present home and environment; the existence, or lack thereof, of an ongoing family unit; the extent to which uncertainty of parentage already exists in the child's mind; and any other relevant factors. In determining whether paternity should be decided, the trial court must balance the interests of all parties involved, while keeping in mind that the child's interests are paramount. 108 Wash. 2d at 312.

Unlike *McDaniels*, where someone outside the family unit filed the paternity action, in the present case, the action was prosecuted by the court appointed guardian ad litem. When the court ordered the blood testing it had before it the various petitions, affidavits, motions, and responses of the parties. The court stated that at such time it had made a determination it was in the best interests of the child for paternity to be determined. It cannot be said that the court acted without considering the best interests of the child, although it did reserve the consideration of all of such evidence for a later determination of visitation and custody.

Although neither appellant cites *In re Marriage of Zodrow*, 240 Kan. 65, 727 P.2d 435 (1986), the guardian ad litem contends its holding justifies her actions. In *Zodrow*, under all of the circumstances, the Kansas Supreme Court found the trial court did not abuse its discretion in denying a K.S.A. 60-260(b) motion by the mother to modify a divorce decree or in refusing to require her ex-husband, who was married to her at the time of the child's birth, to submit to a blood test. 240 Kan. at 71. The trial court in *Zodrow* found it was not in the best interests of the child to require the ex-husband to submit to the blood tests where there also was an older child; no paternity action was

pending; and where the mother alleged, after the granting of the divorce, that it had come to her attention as the result of certain paternity testing that her ex-husband was not the father of the child. It appeared to the trial court that the wife had been "playing games with the court, keeping the ace up her sleeve until it was most advantageous to play that card." 240 Kan. at 68.

The court in *Zodrow* recognized that the trial court considered the child's best interests in refusing the blood tests. In this case, there is only one child, and, although a full evidentiary hearing was not held, the trial court found that a determination of parentage was in the best interests of the child. The child has an interest not only in obtaining support, but also in inheritance rights, family bonds, and accurate identification of his parentage, which justifies the decision of the trial court allowing and ordering the parentage determination to proceed.

A trial court, faced with a valid request for the determination of parentage, may logically reason that, if blood testing proves the presumed father to be the biological father, the issue of parentage is closed and the necessity for extended evidence as to the child's best interests is precluded. If, however, the alleged father is determined to be the biological father, as is the case within, the court may still hear and consider evidence as to the best interests of the child in determining custody, visitation, and child support.

We do not believe that appellate courts should attempt to set down a bright line rule as to how the trial court must proceed in actions under the Kansas Parentage Act, as other factual situations might well justify an evidentiary hearing before blood testing is ordered. Such matters are best left to the sound discretion of the trial court.

Charles and Robert contend that the guardian ad litem failed to make an independent investigation of the facts, pursuant to K.S.A. 38-1505(a). K.S.A. 38-1505 falls within the Code for Care of Children and requires an independent investigation of the facts upon which a petition for a child in need of care determination is based. The requirements which exist before a child in need of care petition can be filed are not applicable here.

*Was Sylvia equitably estopped from denying Robert's paternity?*

Robert argues that Sylvia is estopped from bringing this action.

The trial court agreed by correctly applying the doctrine of equitable estoppel. Such a determination does not assist Robert, as the trial court properly appointed a guardian ad litem and allowed the action to proceed on behalf of the child.

*Was the determination of parentage made at the time of the divorce res judicata?*

Robert also argues that, since the issue of parentage was determined at the time of the divorce, the present determination is precluded by the doctrine of res judicata. The child was not a party to his parents' divorce and was not given a full and fair opportunity to litigate the issue of paternity. The doctrine of res judicata does not apply to individuals who were not a party to the prior proceedings. *McGregor v. Turner*, 205 Kan. 386, 391, 469 P.2d 324 (1970).

*Is Robert an equitable parent? Has there been an equitable adoption? Should the child be an active party to the consideration of equitable adoption, adoption by estoppel, or equitable parenthood?*

The Kansas Supreme Court specifically declined to recognize the doctrine of equitable adoption in *In re Estate of Robbins*, 241 Kan. 620, 625, 738 P.2d 458 (1987). The *Robbins* case was an equitable contract claim against the deceased's estate and not a paternity action, but the court flatly stated:

"Our recognition of 'equitable adoption' would open the doors of the courthouse for individuals claiming as the equitably adopted child to contest the adoptive parent's will, to bring actions for wrongful death of an adoptive parent, to claim life insurance or death benefits due the heirs of a deceased parent, and to claim support from the adoptive parent as well as the right to inherit under the law as any natural or statutorily adopted child. *Persons claiming to be the parent of an 'equitably adopted' child could also obtain legal status and the rights of a parent.*

"Rather than open our courts to the various claims available under 'equitable adoption,' we again decline to recognize this doctrine." (Emphasis added.) 241 Kan. at 625.

Robert's contention of adoption by estoppel or equitable parenthood fails for all of the reasons set forth by our Supreme Court in *Robbins*.

Robert broadly argues, "[I]f the court rules that 'every child is entitled to have his biological father determined' irrespective of the actions of the parties, there will be a flood of litigation, bastardizing of children and creating mental trauma and confusion beyond relief." We do not agree. Judge Leon R. Yankwich

recognized the injustice of thrusting upon innocent children society's condemnation of the behavior of their parents when he said, "[T]here are no illegitimate children, only illegitimate parents." *Estate of Woodward*, 230 Cal. App. 2d 113, 118, 40 Cal. Rptr. 781 (1964).

Robert's argument is inappropriate, as the guiding principle of the Kansas Parentage Act is to provide substantive legal equality for all children regardless of the marital status of the parents. Pejorative adjectives such as "legitimate," "illegitimate," or "bastard" have been eliminated as inconsistent with this goal. See Moline, *The Kansas Parentage Act—A Proposal for Legal Equality for Non-Marital Families*, 52 J.K.B.A. 254, 258 (1983). The act defines "parent and child relationship" as "the legal relationship existing between a child and the child's biological or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations." K.S.A. 38-1111. We neither approve of nor condone the actions of the parents, but this in no manner limits or extinguishes the rights of the child.

*Did the trial court err in admitting the blood tests?*

Robert finally contends that the trial court erred in admitting the blood tests because there was notice to or waiver of notice by all necessary parties that the results were being contested.

K.S.A. 38-1118 reads in relevant part:

"Whenever the paternity of a child is in issue in any action or judicial proceeding in which the child, mother and alleged father are parties, the court, upon its own motion or upon motion of any party to the action or proceeding, shall order the mother, child and alleged father to submit to blood tests. . . . The tests shall be made by experts qualified as examiners of blood types who shall be appointed by the court. The verified written report of the court-appointed experts shall be considered to be stipulated to by all parties unless written notice of intent to challenge the validity of the report is given to all parties not less than 20 days before trial. If such notice is given, the experts shall be called by the court as witnesses to testify as to their findings and shall be subject to cross-examination by the parties."

Robert's counsel argued at trial that he had delivered a letter to the guardian ad litem informing her he intended to contest the validity of the Human Leukocyte Antigen (HLA) blood tests. Counsel admitted he did not serve a written notice or otherwise notify Sylvia of his challenge to the validity of the report and contended he was not required to do so because her attempt to have paternity determined had been dismissed by the court. Charles waived the requirement of notice.

The court properly held that, although Sylvia was precluded from bringing this action, she was still a necessary party. K.S.A. 38-1117 specifically states the necessary parties to the action are the mother, the child, and the presumed and putative fathers. *Rush v. Concrete Materials & Construction Co.*, 172 Kan. 70, 74, 238 P.2d 704 (1951), defines the necessary party as "one who may have an interest in the subject matter of the suit and whose right may be materially affected or concluded by the judgment and therefore one without whom the court will not proceed." The court correctly found the mother to be a necessary party and, notice having not been given to her, allowed the introduction of the evidence of the HLA blood tests pursuant to K.S.A. 38-1118. HLA blood tests have become an accepted method of determining parentage in Kansas. *Tice v. Richardson*, 7 Kan. App. 2d 509, 644 P.2d 490 (1982). The court properly overruled the objections and admitted the blood tests into evidence, which tests were the basis for a determination of parentage by clear and convincing evidence.

"The test on appellate review of whether the trial court abused its discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision." *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124 (1988). Under all of the circumstances, the trial court did not abuse its discretion in making the decisions and rulings of which Robert and Charles complain.

Affirmed.