(996 P.2d 841)
No. 83,453

DALE E. FERGUSON, *Appellant*, v. DEBRA J. WINSTON (LINDSAY) and LYNN FELTS, *Appellees*.

Opinion filed February 11, 2000.

*Dale E. Ferguson*, appellant pro se.

*Michael S. Martin*, of Westwood, for appellee Debra J. Lindsay.

Before PIERRON, P.J., LEWIS, J., and JENNIFER JONES, District Judge, assigned.

LEWIS, J.: Plaintiff Dale E. Ferguson and defendant Debra J. Winston (Lindsay) were once husband and wife. They were divorced in 1988. They lived together for a period of 2 or 3 years prior to their marriage. While they were living together but before they were married, a child was conceived and born on May 16, 1980. The child, now an adult, was named Michael. For many years, it seemed without dispute that Michael was the child of Dale and Debra. However, at the time of the parties' divorce, Debra declared that Michael was not Dale's child but was the child of defendant Lynn Felts. Dale filed this paternity action pursuant to the Kansas Parentage Act, K.S.A. 38-1110 *et seq.* The trial court ordered a blood test without holding a *Ross* hearing and determined on the basis of the blood test alone that Dale was not the biological father of Michael. The trial court then dismissed Dale's petition, which leaves Michael's paternal parentage unknown. Dale appeals.

We reverse and remand.

The facts which underlie this action give it a somewhat bizarre tilt and certainly create questions as to the relevance of the entire proceedings. To begin with, there is an obvious question as to just why this is being litigated. Michael became an adult during the litigation, and it is apparent there were and are no issues of child custody or child support being litigated. The relevance, in a legal

sense, of who is Michael's biological father is questionable. We question the advocacy of determining the parent of a child who becomes an adult during the course of the litigation, who is not a party of the action, and who is not represented by a guardian ad litem. In this case, decisions were made concerning Michael's parentage without Michael, an adult, having been given an opportunity to be heard on the subject.

We are unable to answer all of the questions which arise. However, from a procedural and a legal point of view, we conclude the trial court erred in several respects, and its decision must be reversed.

The trial court summarily determined that Dale was not Michael's biological father and dismissed the action *solely* on the basis of the DNA evidence. This was erroneous for a number of reasons.

First, the DNA test, relied on by the trial court, was ordered without holding a *Ross* hearing as required by the Supreme Court in *In re Marriage of Ross*, 245 Kan. 591, 602, 783 P.2d 331 (1989). In *Ross*, the facts are similar in many respects to those in this action. The trial court in *Ross* ordered that the parties submit to blood tests and determined paternity on the basis of those tests without determining whether it was in the child's best interests to determine his parentage. The Supreme Court reversed the trial court's decision and said:

"Under the facts of this case, the district judge abused his discretion. The mere filing of a paternity action does not automatically imply that the action is in the child's best interests. A court must reach this conclusion independently based on the facts in the record. *McDaniels v. Carlson*, 108 Wash. 2d at 313. We realize, of course, that Charles' paternity has been determined and cannot be undone; however, our decision in this case will have meaningful application to similar cases in the future.

"The district court's order requiring the parties to submit to blood tests is reversed. The district court's determination that Charles is the biological father of R.A.R. is also reversed. While we realize that blood tests have already been performed in this case, the court shall not consider the result of the tests until such consideration is determined to be in R.A.R.'s best interests." 245 Kan. at 602.

We cannot distinguish this case from *Ross*. A *Ross* hearing must be held prior to ordering the blood tests to determine if the presumed father is the biological father.

"Prior to ordering a blood test to determine whether the presumed parent is the biological parent, the district court must consider the best interests of the child, including physical, mental, and emotional needs. The shifting of paternity from the presumed father to the biological father could easily be detrimental to the emotional and physical well-being of any child." *In re Marriage of Ross*, 245 Kan. 591, Syl. ¶ 5.

"The mere filing of a paternity action does not automatically imply that the action is in the child's best interests. A court must reach this conclusion independently based on the facts in the record." *In re Marriage of Ross*, 245 Kan. 591, Syl. ¶ 6.

Dale is Michael's presumed father for a number of reasons:

(1) Dale and Debra were living together when Michael was conceived and born, and after the child's birth, they were married. See K.S.A. 1998 Supp. 38-1114(3).

(2) Dale has acknowledged paternity in writing on several occasions. For instance, Dale procured an order nunc pro tunc in the parties' divorce action, finding him to be Michael's father. This order was later set aside, but that action does not eliminate the fact that the filing of the motion for the order nunc pro tunc was a written acknowledgement of paternity.

(3) The filing of the current action is a written acknowledgment of paternity.

(4) Michael's social security card shows that Dale is his father.

(5) Michael's enrollment into kindergarten shows Dale as his father.

(6) In 1998, Dale procured a journal entry, signed by Judge Larry McClain, stating that Dale was Michael's father. This journal entry was later set aside as void, but the proceedings leading up to it are certainly an acknowledgement by Dale of his paternity of Michael.

(7) Michael was named after Dale and, for a period of 14 years, Debra recognized Dale as Michael's father.

(8) For at least 1 year, Dale made payments of $150 per month as child support for Michael.

We hold that under the circumstances, Dale was the presumed father of Michael and that it was error for the trial court to consider DNA evidence obtained without the benefit of a *Ross* hearing. As a result, and consistent with the decision in *Ross*, we reverse the

trial court's order requiring the parties to submit to blood tests. We reverse the trial court's determination that Dale is not Michael's biological father. That determination was made on the basis of a DNA test conducted in the absence of a *Ross* hearing. Under *Ross*, the trial court erred in the consideration of that evidence. On remand, a *Ross* hearing must be held prior to the consideration of any DNA tests on the question of parentage.

In addition, even had there been a *Ross* test, the trial court treated the DNA evidence as conclusive on the issue of paternity. That was erroneous. While DNA evidence is very strong, we find no evidence to deem it conclusive. It is only one bit of evidence listed by the legislature under K.S.A. 1998 Supp. 38-1119. There are five other evidentiary items listed under that statute. At the very least, despite the DNA evidence, the trial court is required to consider the evidence offered by the plaintiff, which may be in contradiction of the DNA evidence before deciding the issue of paternity.

If DNA evidence is conclusive on the issue of paternity, we could simply do away with the judicial process in paternity cases. If the DNA test is conclusive, the paternity of children will be left for resolution by the scientists, and judges will become superfluous in that regard. We do not perceive the law to require or to recommend that result, and we hold the DNA evidence is not conclusive on the issue of paternity. On remand, if the trial court decides the DNA evidence is in Michael's best interests, it must still consider any other evidence offered before making a final decision.

Finally, we are convinced that Michael's constitutional due process rights were violated by the procedure followed in this case. We believe it to be clear that Michael's rights to parentage are due process rights. The Fourteenth Amendment of the United States Constitution prohibits a state from depriving "any person of life, liberty, or property, without due process of law." In a general sense, the term "due process" has come to mean that one cannot be deprived of an important property interest without notice and an opportunity to be heard. See, *e.g.*, *In re C.H.W.*, 26 Kan. App. 2d 413, 419, 988 P.2d 276 (1999).

It is inconceivable to us that a child would not have a due process right in the determination of his or her parentage. In *In re Marriage of Ross*, 13 Kan. App. 2d 402, 407, 772 P.2d 278, *aff'd in part and rev'd in part* 245 Kan. 591, 783 P.2d 331 (1989), we said (a comment not nullified by the Supreme Court's reversal): "The child has an interest not only in obtaining support, but also in inheritance rights, family bonds, and accurate identification of his parentage, which justifies the decision of the trial court allowing and ordering the parentage determination to proceed." The rights and interests of a child in his or her parentage are due process rights which cannot be terminated or affected without notice and an opportunity to be heard. We also note that the cases have been unanimous in concluding that a parent has a fundamental liberty interest in maintaining a familial relationship with a child. See *In re J.L.D.*, 14 Kan. App. 2d 487, Syl. ¶ 1, 794 P.2d 319 (1990). By the same token, we hold that a child has that same fundamental interest in his or her parentage.

In this case, Michael's due process rights were left unprotected. Dale purported to bring this action as Michael's next friend. However, under the circumstances, it should have become immediately apparent that Michael's due process rights would not be protected without his having independent counsel or, at the very least, a guardian ad litem. Michael had neither.

As we view the action, Michael was not a true party, and no guardian ad litem was appointed to represent him. Dale advises that he asked the court to appoint a guardian ad litem and that the court refused to do so. We find no such motion in the record.

K.S.A. 1998 Supp. 38-1125(b) provides that the court *shall appoint* a guardian ad litem if it finds that the interests of the child and the interests of the petitioner differ. No such inquiry was made by the court in this case. In the absence of such an inquiry and in the absence of a resolution of that question, it is error to proceed with the matter and to order DNA testing and to determine the parentage of a child where that child is not represented or even present in person. The failure of the trial court to make the determination required by 38-1125(b) requires that its orders in this case be reversed.

Michael is now an adult. It is beyond our conception that we would allow his parentage to be determined on remand without his being a party to this action. Accordingly, on remand, we order that Michael be joined as a party to this action before any further steps are taken in the process. In the event Michael is unable to financially obtain counsel, one should be appointed for him under K.S.A. 1998 Supp. 38-1125(c). Only when this is accomplished may the process begin anew on remand. We do not, by this order, mean to infer that a child must always have an independent attorney and must always be independently made a party to a parentage action. We do hold, however, that when that child is an adult, he or she must be made a party to the action and must be represented by counsel before his or her parentage is determined. In the event the child is not an adult, the trial court must consider the issues set out in 38-1125, and we strongly urge that in every such case a guardian ad litem be appointed.

We reverse and remand this matter for further proceedings consistent with this opinion. If necessary, the trial court must determine the issues raised by Dale's petition within the guidelines set forth in this opinion. By the same token, we encourage the parties to consider whether there is any value in continuing this litigation. We specifically suggest that the trial court and the parties to this action give special attention to the wishes of Michael, whose paternity is to be resolved in this action.

Reversed and remanded.