(82 P.3d 854)

No. 90,746

KATHY A. TALBOT, *Appellant*, v. DWIGHT L. PEARSON, *Appellee*.

Opinion filed January 16, 2004

*Autumn L. Fox*, of Abilene, for appellant.

*Norman R. Kelly*, of Salina, for appellee.

Before GREENE, P.J., LEWIS and MALONE, JJ.

GREENE, J: Natural father of B.V., Dwight, moved the court for an order granting him primary residential custody and granting him

and natural mother, Kathy, joint legal custody of B.V., an 11-year-old son who lived with his mother subject to father's visitation rights pursuant to prior order. After an evidentiary hearing and in camera interviews with the child, the district court granted the motion. Mother alleges procedural defects and claims the court's order was not in the best interests of the child. We affirm.

*Factual and Procedural Overview*

Kathy and Dwight are the natural parents of B.V., who was born on February 26, 1992. Pursuant to a previous order, B.V. lived with his mother subject to father's visitation rights. On November 12, 2002, Dwight moved the court for an order granting him and his wife, Alisha, joint legal custody of B.V., asserting that there had been a material change in circumstances since the court's earlier order of support and residency and claiming that the change in legal custody would be in the best interests of B.V. The court ordered mediation of the custody dispute.

The mediation was nearly successful and resulted in an unexecuted written agreement, wherein mother agreed to joint legal custody with father having residential custody subject to certain weeknight and weekend parental custody by mother. The record is not entirely clear as to the reasons why the agreement was not finalized, except mother stated at the hearing a preference to modify the nights of her weeknight parenting.

After the mediation failed, the district court conducted an evidentiary hearing. Father, father's wife, paternal grandmother, and mother all testified, and portions of their testimony will be referenced below as material to issues discussed. The court also conducted two in camera interviews with the child, neither of which was of record. The court's ruling from the bench analyzed relevant factors listed in K.S.A. 2002 Supp. 60-1610, mentioned the difficulty of the case, and granted father's motion, adopting the terms and provisions of the unexecuted mediation agreement.

Mother appeals.

*Verification Requirement of K.S.A. 2002 Supp. 60-1628 is Not Jurisdictional.*

Mother argues that K.S.A. 2002 Supp. 60-1628(a) specifies a jurisdictional requirement that motions to modify custody be verified. The amended statute provides as follows:

"(a) A party filing a motion to modify a final order pertaining to child custody or residential placement pursuant to K.S.A. 38-1101 *et seq.* or K.S.A. 60-1601 *et seq.*, and amendments thereto, *shall include with specificity in the verified motion, or in an accompanying affidavit, all known factual allegations which constitute the basis for the change of custody or residential placement.* If the court finds that the allegations set forth in the motion or the accompanying affidavit fail to establish a *prima facie* case, the court shall deny the motion. If the court finds that the motion establishes a *prima facie* case, the matter may be tried on factual issues." (Emphasis added.)

Mother suggests that legislative history supports her argument that the verification requirement was intended to be jurisdictional. In particular, she cites attorneys who testified that the requirement would "do away with some of the abuse in the system which is taking place." Our appellate courts have not yet had occasion to address this verification requirement, so we have no controlling precedent. In construing the statute for purposes of this appeal, we find it critical that no timely objection was made to this defect in father's petition. When the lack of verification was first brought to the attention of the district court, sworn testimony of the movant had already been taken in support of his motion.

We conclude that the verification requirement of K.S.A. 2002 Supp. 60-1628(a), although of obvious import and potentially fatal to a motion to modify custody where timely objection is made, is not jurisdictional in nature and cannot void the proceedings in district court when waived by failure of timely objection. We note that the requirement need not be jurisdictional to serve the purposes addressed by those who testified in its support at the legislature, and we further note that the requirement is not unlike a similar requirement in probate proceedings, K.S.A. 59-2201. We have held that the probate requirement is not jurisdictional. See *In re Adoption of A.P.*, 26 Kan. App. 2d 210, 218, 982 P.2d 985, *rev. denied* 268 Kan. 886 (1999).

For these reasons, the statutory verification requirement was waived by failure of timely objection, and mother's jurisdictional argument fails.

*The District Court's Failure to Express Custodial Arrangements in Statutory Terms Does Not Merit Remand.*

Second, Kathy argues the court's order violates K.S.A. 2002 Supp. 60-1610 because the order failed to designate the legal custody of B.V.

K.S.A. 2002 Supp. 60-1610(a)(4) governs legal custodial alternatives and provides:

"(4) *Types of legal custodial arrangements.* Subject to the provisions of this article, the court may make any order relating to custodial arrangements which is in the best interests of the child. The order shall provide one of the following legal custody arrangements, in the order of preference:

"(A) *Joint legal custody.* The court may order the joint legal custody of a child with both parties. In that event, the parties shall have equal rights to make decisions in the best interests of the child.

"(B) *Sole legal custody.* The court may order the sole legal custody of a child with one of the parties when the court finds that it is not in the best interests of the child that both of the parties have equal rights to make decisions pertaining to the child. If the court does not order joint legal custody, the court shall include on the record specific findings of fact upon which the order for sole legal custody is based. The award of sole legal custody to one parent shall not deprive the other parent of access to information regarding the child unless the court shall so order, stating the reasons for that determination."

Residential arrangements are controlled by subsection K.S.A. 2002 Supp. 60-1610(a)(5), which provides:

"(A) *Residency.* The court may order a residential arrangement in which the child resides with one or both parents on a basis consistent with the best interests of the child."

The problem here is the district court's failure to use the precise language from K.S.A. 2002 Supp. 60-1610(a)(4). Ruling from the bench, the court made the cryptic statement that it was not finding "joint custody" to be appropriate but rather found "shared custody" to be appropriate. The phrase "shared custody" does not appear in K.S.A. 2002 Supp. 60-1610(a)(4). In the written journal entry, signed by the court, the language is as follows: "The Court

specifically finds that the present custody arrangement shall change to that of shared custody between the parties with [Dwight] having primary rights of residency effective at and after May 29, 2003."

Although we agree that the district court's order is somewhat confusing, the express conclusion that "shared custody" was appropriate can only be construed as awarding joint legal custody pursuant to K.S.A. 2002 Supp. 60-1610(a)(4)(A), since it is clear that the only statutory alternative, sole legal custody, was certainly not intended given the court's comments regarding the suitability of both parents. Perhaps the district court chose to characterize joint legal custody as "shared" in this case given the difficulty of the decision and the attempted parity in residential arrangements. In any event, we view the ambiguity in statutory nomenclature to be of no legal moment, especially since counsel agreed during oral argument that there was no practical impact on the parties of the court's chosen language.

For these reasons, we reject mother's suggestion that remand is required to address legal custody.

*The District Court Did Not Abuse Its Discretion in Determining the Best Interests of the Child.*

Mother argues that the district court abused its discretion in awarding changes in legal and residential custody, suggesting a host of errors in the district court's focus and analysis.

At the outset, it is critical to note that the district court provided an analysis of the evidence as to each statutory factor listed in K.S.A. 2002 Supp. 60-1610 as a part of its ruling from the bench. We have reviewed both the record and the court's analysis in detail and find no abuse of discretion in the manner in which the court viewed the evidence pursuant to each factor.

Mother first argues that the district court failed to apply a presumption that the existing residential arrangements were in the child's best interests pursuant to K.S.A. 60-1610(a)(3)(A). This presumption is inapplicable, however, where circumstances have changed and no present agreement is presented to the court. See *In re Marriage of Bradley*, 258 Kan. 39, 42-43, 899 P.2d 471 (1995). The statutory presumption governs the district court in determin-

ing the child's best interests when the parties have presented an agreement for the court's adoption. Here, the parties were unable to agree, thus requiring an evidentiary hearing and determination by the court. This argument fails.

Mother next argues that the district court based its decision primarily on the child's expressed desire to live with his father and that any such preference should be subordinate to the overall best interests of the child, citing *In re Marriage of McClaren*, 214 Kan 217, 220, 519 P.2d 720 (1974). Although it is clear that the court was influenced in part by the child's preference, the court's clear and expressed attention on the record to *all* of the statutory factors defies any abuse of discretion. This argument fails.

Mother next argues that the district court erred in failing to record its in-camera interviews with the child. Such interviews are permitted and governed by K.S.A. 2002 Supp. 60-1614, which provides in part:

"The court may interview the minor children in chambers to assist the court in determining legal custody, residency, visitation rights and parenting time. The court may permit counsel to be present at the interviews. Upon request of any party, the court shall cause a record of the interview to be made as part of the record in the case."

The statute appears to contemplate that the interview need not be recorded unless there is a request by a party. Kathy fails in her brief on appeal to cite to any record evidence of such a request.

This court, in *Dickison v. Dickison,* 19 Kan. App. 2d 633, 642, 874 P.2d 695 (1994), called the failure of the district court to make a recording of an in camera interview between the district court and the child "troublesome," but the court's discussion in *Dickison* was designed to inform the district court of the "better practice." *Dickison* warned that the failure to make a record of such an interview in the future "may constitute reversible error." 19 Kan. App. 2d at 642.

According to the statements of the district court in ruling from the bench and in its written journal entry, the only evidence gleaned from B.V. during the in-camera interviews was the fact that he wanted to live with his father. This fact was also established by Dwight, Alisha, and Venita, and was not specifically disputed by

mother. Although we reiterate that recording such interviews is the better practice, we find no error in this case because the fact established by B.V.'s comments to the district court was also established by other witnesses who testified at the hearing and was not in material dispute. Kathy's claim of error in the court's failure to record is rejected.

Mother finally argues that the district court failed to consider the effect of father's schedule on the best interests of the child. The argument is that father's schedule does not permit adequate time for the child because father works from 9 a.m. to 6 p.m. on weekdays and 9 a.m. to 1 p.m. on Saturdays. Additionally, he works out 3 to 4 evenings a week until 9 p.m.

In the district court's ruling from the bench, it commented: "We have some everyday glitches that can happen in anybody's home. We all have to work. We all have to earn a living. We all have to be responsible." It appears to this court that the district court adequately considered father's schedule as a part of its responsibility to consider all relevant factors having a bearing on the child's best interests. Moreover, the schedule imposed by the mediation agreement and adopted by the court provides that mother has parental duties during 2 week nights and alternating weekends, so it would seem that father could easily accommodate his "work-out" needs without impairing his time with the child. We are unpersuaded that the district court failed to consider father's schedule constraints, and we find no abuse of discretion in this regard.

*Summary and Conclusion*

We have reviewed the record in considerable detail and agree with the district court that this was a difficult case. Consideration of some of the statutory factors may have favored mother, while others may have favored father. Perhaps these factors could have been balanced in more than one way, but the trial court was in the most advantageous position to judge how the interests of the child may best be served. See *Simmons v. Simmons*, 223 Kan. 639, 643, 576 P.2d 589 (1978). We have only the printed page to consider, but the trial court has the advantage of seeing the witnesses and parties and its judgment may not be disturbed in the absence of

an abuse of discretion. *Greene v. Greene*, 201 Kan. 701, 704, 443 P.2d 263 (1968). We find it particularly compelling in this case that mother chose to testify that the mediation agreement that was ultimately adopted by the court (with one minor exception) was "all right with her." We understand the high stakes in these cases and we appreciate the vigor of her arguments, but her near agreement to the terms that were imposed mitigates her claims of error and prejudice. We simply cannot conclude that no reasonable court would have reached the decision appealed from. See *Bradley*, 258 Kan. at 42.

Affirmed.