(125 P.3d 1081)

No. 94,443

In the Matter of the Marriage of RACHAEL NELSON, n/k/a RACHAEL MARSH, *Appellant,* and BLAIN NELSON, *Appellee.* MELISSA MCMULLEN, *Intervenor/Appellee.*

Opinion filed January 13, 2006.

*Paula D. Hofaker*, of Logan, for appellant.

*Charles E. Worden*, of Worden Law Office, of Norton, for appellee.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chartered, of Norton, for intervenor/appellee.

Before GREEN, P.J., LARSON, S.J., and WAHL, S.J.

WAHL, J.: Rachael and Blain Nelson were married on May 8, 1993. A daughter, C.N.N., was born in 1995, and a son, N.R.N., was born in 2002. Rachael and Blain separated frequently during the marriage, and on December 23, 2003, Rachael filed for divorce. The parties, each represented by counsel, entered into agreed temporary orders which provided in relevant part that the parties would share equal time with the children and that Rachael would not allow the children to have contact with her boyfriend, Doug Marsh. Doug was charged in 1986 with engaging in sexually inappropriate contact with a 4-year-old boy and apparently entered into a diversion agreement as a result of the incident.

On March 9, 2004, Blain filed a motion for temporary custody, alleging that Rachael had violated the agreed temporary orders by refusing to allow him parenting time and by allowing the children to have contact with Doug. On March 30, 2004, a hearing was held wherein the parties signed custody orders agreeing that third-party placement with Blain's sister, Melissa McMullen, was in the best interests of the children. The agreed custody orders also provided that the children were to have no contact with Doug. The agreed custody orders provided:

"The parties agree that the third party placement is in the best interest of the minor children and shall continue until such time as there is a material change in circumstance, as defined by Kansas Statute, the cases decided by the Court of Appeals and Kansas Supreme Court, and each waive the claim of parental preference as to this placement during the minority of the children. Each party acknowledges that they have been advised by their counsel of the Kansas Constitutional provisions concerning parental preference towards their children and they

each acknowledge that the facts and circumstances warrant the third party placement and that the third party placement is in the best interest of the minor children."

The agreed custody orders were approved by the district court and were signed by counsel and by Rachael and Blain.

On May 10, 2004, the divorce decree was filed. At this time, the parties also entered into a property settlement agreement and a permanent parenting plan which were approved by the district court and signed by both parties, further memorializing the parties' agreement to place custody of the children with Melissa.

Soon thereafter, Rachael and Doug married. On September 15, 2004, Rachael filed a motion for change of custody which included a request to terminate the condition that the children not be around Doug. In the motion, Rachael argued that she was able to provide a stable environment for the children and that placement with her was in their best interests. Rachael also alleged that since the agreed custody orders had been entered into, she had completed a favorable parenting evaluation and that Doug had also completed an evaluation which indicated that there was no evidence of sexual deviance. Blain did not support Rachael's motion for a change in custody.

Melissa moved to intervene in the matter and also moved to have the action dismissed, contending that Rachael had failed to state facts which, if true, would demonstrate a material change of circumstances such that it was in the best interests of the children to change custody. The district court granted Melissa's motion to intervene but denied the motion to dismiss, as the court wished to further examine the parties' waiver of the parental preference doctrine. The court reserved the right to reconsider the motion at trial after receipt of all or a portion of the evidence.

On January 7, 2005, a pretrial hearing was held regarding the parties' waiver of the parental preference doctrine. At the hearing, Rachael testified that she entered into the custody agreement and waived the parental preference doctrine only because she thought that SRS was going to take the children and place them in foster care. Rachael claimed that she did not think that waiving the pa-

rental preference doctrine was a "big deal" at the time because she believed the arrangement to be temporary.

Following testimony, the district court concluded that the parental preference doctrine as set out in *Troxel v. Granville*, 530 U.S. 57, 147 L. Ed. 2d 49, 120 S. Ct. 2054 (2000), did not apply to this case because Rachael and Blain waived the doctrine when they agreed to grant custody to Melissa. The court held that Rachael had not been under duress and that she had knowingly and voluntarily waived her parental rights. The court noted that under the "parental presumption" doctrine, which stands for the notion "that parents act in the best interests of their children; as long as a parent is fit, there 'will normally be no reason for the state to inject itself into the private realm of the family.' " The court held that because there had been no showing of unfitness in the present case, it would be presumptuous, absent a material change in the circumstances, for the court "to inject itself into the private realm of the family and question the ability of Rachael Nelson Marsh and Blain Nelson to make a decision that was in the best interest of their minor children."

Melissa renewed her motion to dismiss Rachael's motion for change of custody, alleging that there had been no prima facie showing of a material change in circumstances. The court denied the motion in an attempt to allow the parties to fully address all issues in the case.

On February 22-24, 2005, a final hearing on the matter was held to determine whether there had been a material change in circumstances sufficient to justify a change in custody. Following testimony, Melissa moved for a directed judgment. The district court granted the motion, finding that Rachael had failed to demonstrate a material change of circumstances such that it was in the best interests of the minor children to change custody. The court ordered that the current parenting plan was to remain in effect and denied Rachael's request to vacate its previous order prohibiting the children from having any contact with Doug.

Rachael appeals, contending the district court erred in denying her motion to change custody. She alleges that the parental preference doctrine as set forth in *In re Guardianship of Williams*, 254

Kan. 814, 869 P.2d 661 (1994), requires the district court to award custody of the children to her.

Whether a child custody order is to be changed or modified rests with the sound judicial discretion of the trial court. *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 (2002). In a custody modification proceeding, a trial court has the advantage of seeing the witnesses and parties, and its judgment may not be disturbed in the absence of an abuse of discretion. *Talbot v. Pearson*, 32 Kan. App. 2d 336, 342-43, 82 P.3d 854 (2004). "Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. [Citations omitted.]" *Varney Business Services, Inc. v. Pottroff*, 275 Kan. 20, 44, 59 P.3d 1003 (2002).

Basic rights of a parent to the care, custody, and control of his or her children are fundamental rights protected by the Fourteenth Amendment Due Process Clause. The United States Supreme Court had long recognized that parents have a constitutionally protected right to raise their children as they choose without excessive interference from the State. See, *e.g., Troxel*, 530 U.S. at 65-66. The parental preference doctrine

"is a firmly established rule in this state that a parent who is able to care for his or her children and desires to do so, and who has not been found to be an unfit person to have their custody in an action or proceeding where that question is in issue, is entitled to the custody of his or her children as against grandparents or others who have no permanent or legal right to the children's custody, even though at the time the natural parent seeks their custody such grandparents or others are giving the children proper and suitable care and have acquired an attachment for them." *Williams*, 254 Kan. 814, Syl. ¶ 2.

Rachael contends that, as a fit parent, she is entitled to custody over Melissa, a nonparent, based on the holding of *Williams*. Her argument ignores two important points. First, Blain supports the district court's ruling and prefers that custody remain with Melissa. Under K.S.A. 2004 Supp. 60-1610(a)(3)(B), "[n]either parent shall be considered to have a vested interest in the custody or residency of any child as against the other parent . . . ." Rachael is not automatically entitled to custody based on the holding in *Williams*. Most importantly, the *Williams* court did not consider a factual situation in which both parents had waived the parental preference

doctrine. Here, the district court held that Rachael had expressly waived her parental preference rights.

Clearly, a parent may waive the parental preference doctrine. "It is beyond argument that 'all constitutional rights may be freely and voluntarily waived.' " *In re Habeas Corpus Application of Tolle*, 18 Kan. App. 2d 491, 496, 856 P.2d 944 (1993). The district court did not err in determining that the parental preference doctrine could be waived.

Rachael argues she did not knowingly waive her constitutional parental preference rights, claiming that she was under duress when she waived the rights. She contends she approved the agreed custody order only because she believed that SRS was going to remove the children from her and Blain's care and custody if the children remained with either one of them.

When determining whether rights are knowingly waived, this court determines whether there is substantial competent evidence to support the district court's ruling. *State v. Donesay*, 265 Kan. 60, 68, 959 P.2d 862 (1998). The waiver of a statutory right involving the protected interests of parental rights should appear distinctly on the record. *In re H.D.W.*, No. 90,193, unpublished opinion filed February 13, 2004.

The record reflects that Rachael knowingly and voluntarily waived the parental preference doctrine. The decision to place custody of the children with Melissa was made in March 2004 when the parties signed the agreed custody orders. Those orders stated that the parties waived the parental preference doctrine and acknowledged that they had been advised by counsel "of the Kansas Constitutional provisions concerning parental preference" and "that the facts and circumstances warrant the third party placement and that the third party placement is in the best interest of the minor children." The signed permanent parenting plan was presented to the court on May 10, 2004. A transcript of the hearing on that date contains Rachael's testimony in response to questions by her attorney as to her understanding and agreement. It contains an in-depth questioning by the court as to her understanding and approval of the custody agreement. It contains testimony by Blain while Rachael was in the courtroom. Rachael testified that she

understood it all and agreed to all the provisions. The parties' property settlement agreement referred to the parenting plan and custody order "that provides for third party custody of the minor children."

The decision to place custody of the children with Melissa was originally made in March 2004 when the parties entered into the agreed custody orders, and the permanent parenting plan was not adopted by the court until 2 months later. During this time, Rachael had the benefit of counsel, was questioned by her attorney and the court on the record, and was present in the courtroom while Blain was questioned by his attorney. Clearly, Rachael expressly waived her constitutional parental preference rights.

Also, the record does not support Rachael's argument that she was wrongly informed that SRS was going to remove the children from the home if they remained with her or Blain. The permanent parenting plan provided that "SRS has begun an investigation into each parent and to avoid any further issues, the parties are agreeing to custody with Melissa McMullen until the court finds a material change in circumstances warranting a change thereto."

There is substantial competent evidence to support the district court's finding that Rachael knowingly and voluntarily waived the parental preference doctrine.

Rachael also contends that her waiver of the parental preference doctrine without notice to and consent of her minor children is contrary to public policy and a violation of the children's rights under the Fourteenth Amendment to the United States Constitution. Specifically, she contends that the waiver was not valid because a guardian ad litem was not appointed to approve the custody orders on behalf of the children.

Rachael never raised this issue before the district court, nor did she request a guardian ad litem be appointed for her children. While the district court did raise the possibility of appointing a guardian ad litem during the January 7, 2005, hearing, one was never appointed and there is no indication in the record that Rachael ever objected to the district court's failure to do so. As such, any error could be considered invited by Rachael. "A party may not invite error and then complain of that error on appeal. [Citation

omitted.]" *Butler County R.W.D. No. 8 v. Yates*, 275 Kan. 291, 296, 64 P.3d 357 (2003).

In order for this issue to be laid to rest, we shall briefly consider its merits, but Rachael still is not entitled to relief. She cites *Ferguson v. Winston*, 27 Kan. App. 2d 34, 996 P.2d 841 (2000), for the proposition that the rights and interests of a child in his or her own parentage are due process rights which cannot be terminated or affected without notice and an opportunity to be heard. Rachael's reliance on *Ferguson* is misplaced. There, the plaintiff brought an action to determine the parentage of an adult child, and the adult child was not made a party to the action. The trial court ordered a blood test without holding a *Ross* hearing and determined on the basis of the blood test alone that the plaintiff was not the child's father. This court reversed the ruling, questioning "the advocacy of determining the parent of a child who becomes an adult during the course of the litigation, who is not a party of the action and who is not represented by a guardian ad litem." 27 Kan. App. 2d at 35-36. The *Ferguson* court limited its ruling:

"We do not, by this order, mean to infer that a child must always have an independent attorney and must always be independently made a party to a parentage action. We do hold, however, that when a child is an adult, he or she must be made a party to the action and must be represented by counsel before his or her parentage is determined." 27 Kan. App. 2d at 40.

In the present case, the children were not adults and the issue did not involve determining either child's parentage.

Rachael also improperly relies on *In re Marriage of Schoby*, 269 Kan. 114, 4 P.3d 604 (2000), for the proposition that when a right belongs to a child, it cannot be terminated even by parental agreement. *Schoby* involved a dispute over child support, which is a right of the child. 269 Kan. 114, Syl. ¶ 1. Child custody is not a right which belongs to a child. Further, the appointment of a guardian ad litem is not addressed in *Schoby*.

There is no case law or statutory mandate which compels the appointment of a guardian ad litem for minor children under the circumstances present here.

Lastly, we must determine whether the district court erred in finding that Rachael failed to show a material change in circumstances sufficient to justify changing the custody of the children.

K.S.A. 2004 Supp. 60-1610 controls child custody and residency. The court may change a prior custody order upon a showing of "a material change in circumstances." K.S.A. 2004 Supp. 60-1610(a)(2)(A). "A material change of circumstances" has no precise definition, but it requires consideration of a variety of facts and circumstances. *Johnson v. Stephenson*, 28 Kan. App. 2d 275, 280, 15 P.3d 359 (2000), *rev. denied* 271 Kan. 1036 (2001). A material change in circumstances must be of such a substantial and continuing nature as to make the terms of the initial decree unreasonable. 28 Kan. App. 2d at 280.

In child custody cases, a court's paramount consideration is always the welfare and best interests of the child. K.S.A. 2004 Supp. 60-1610(a)(3); *In re Marriage of Whipp*, 265 Kan. 500, 506, 962 P.2d 1058 (1998). Additionally, K.S.A. 2004 Supp. 60-1610(a)(3)(A) provides:

"If the parties have entered into a parenting plan, it shall be presumed that the agreement is in the best interests of the child. This presumption may be overcome and the court may make a different order if the court makes specific findings of fact stating why the agreed parenting plan is not in the best interests of the child."

Rachael argues the district court erred in failing to find that a material change in circumstances had occurred which warrants a change in custody. Rachael points to several factors which she alleges constitute a material change in circumstances, including the fact that since she entered into the agreed custody orders, she has improved her living situation, she has a stable job, and she and Doug have both completed parenting evaluations. Rachael also contends that C.N.N. wants to live with her and is afraid of Melissa.

Essentially, Rachael asks this court to reweigh the evidence presented to the district court. However, this court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 775, 69 P.3d 1087 (2003).

This court looks to evidence which supports the district court's findings and determines whether there is substantial competent

evidence to support those findings. "Substantial evidence is that which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. [Citation omitted.]" *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003).

Emotional abuse of the children by both parents was substantiated in February 2004, and there was also evidence that spousal abuse had occurred. There was testimony in the record from workers at the High Plains Mental Health Center which suggested that Rachael was falsely reporting that C.N.N. was suffering from certain mental health issues. Additionally, one of the conditions of the agreed custody order was that the children were to have no contact with Doug Marsh. At the May 10, 2004, hearing, the district court stressed the seriousness of this condition with Rachael and she stated that she understood. Despite the seriousness of this obligation, Rachael subsequently married Doug.

Blain testified that the children were doing well in Melissa's care and he felt it was in their best interests to remain with her. There was also considerable testimony presented which indicated that since living with Melissa, C.N.N. is more social and her schoolwork has improved.

There is substantial competent evidence to support the district court's finding that there had been no material change in circumstances sufficient to warrant a change in the children's custody.

Affirmed.