NOT DESIGNATED FOR PUBLICATION

No. 121,850

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

REGINA PIERCE,
*Appellee*,

and

MATTHEW PIERCE,
*Appellee*,

(CHRISTOPHER ROGERS and KAREN ROGERS),
*Appellants*.


MEMORANDUM OPINION


Appeal from Johnson District Court; ROBERT J. WONNELL, judge. Opinion filed August 14, 2020. Appeal dismissed.


*Linus L. Baker*, of Stilwell, for appellants.


No appearance by appellees.


Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.


PER CURIAM: Regina Pierce's parents, Christopher Rogers and Karen Rogers (the Grandparents), timely appeal the district court's denial of their motion to enforce a coparenting agreement entered into between Regina and the Grandparents in 2018. The Grandparents filed the motion in the divorce proceedings in the district court between Matthew Pierce and Regina. Their divorce was granted in 2011. The district court found

1

the Grandparents did not have standing to bring the motion in the divorce proceedings and denied the motion. Upon review, we agree with the district court and find the Grandparents lack standing to bring this action in the divorce proceedings. Therefore, we dismiss the appeal.

FACTS

Matthew and Regina divorced in 2011. The district court granted Regina sole legal custody and primary residential custody of their two children. Matthew was granted limited rights for supervised visitation. In August 2018, Regina and the children moved in with the Grandparents. In October 2018, Regina entered into a coparenting agreement with the Grandparents. In pertinent part, the agreement stated:

"By this agreement the parties shall have joint legal custody of the Children with residential custody of the Children to be at [the Grandparents' home]. Regina is sharing her rights and obligations as a parent with the [Grandparents] and by this agreement Regina is not abdicating her duties and responsibilities as a parent; she is sharing those rights, responsibilities, and duties with the [Grandparents] individually and jointly."

The agreement further stated:

"The parties agree to cooperate with each other to enforce this agreement and particularly in regards to Matthew Pierce attempting to interject himself back into the lives of the Children against their wishes. If necessary, the parties agree to have this agreement made an order of the Court in the divorce proceeding involving the Children which would be to their benefit.

"Regina and the [Grandparents] are of sound mind and under no undue restraint or duress. They have read the agreement and understand it as a free and voluntary act. The parties agree that this co-parenting arrangement may not be terminated or otherwise

2

revoked by either party unless the divorce court or any other court with jurisdiction makes a judicial finding that the [Grandparents] are unfit co-parents."

Shortly after the agreement was signed, the Grandparents filed a motion to enforce the coparenting agreement in the divorce court. Attached to the motion was a copy of the coparenting agreement and a document titled, "Waiver of Notice," which was signed by Regina. In pertinent part, the waiver stated:

"I am aware of the motion made or to be made by [the Grandparents] in this matter in which a co-parenting agreement which bears my signature, which is attached, is requested to be made an order of the Court. I agree to this motion and further consent that the [Grandparents]' motion to have the co-parenting agreement made an order of the Court may be set for immediate hearing without further notice to me."

Regina did not appear at the motion hearing. Matthew also did not appear at the motion hearing and did not submit any filings in response to the motion. At the outset of the hearing, the district court indicated it was concerned whether the Grandparents had standing to intervene in the divorce case and whether the appropriate procedures had been followed for them to do so, including whether proper notice had been given to both Regina and Matthew. The Grandparents generally testified about why the district court should grant their motion. Their testimony detailed why they thought the motion should be granted in the best interests of the children so they could be there to help them in conjunction with Regina.

The district court denied the motion, finding the Grandparents did not have standing to enforce the coparenting agreement in a divorce action. The district court further held it could not enforce the agreement because it lacked sufficient evidence to show Regina and Matthew knowingly and voluntarily waived any of their parental rights because neither appeared at the hearing. The district court found the Grandparents had not properly moved to intervene in the divorce case and, even if they had made an

3

appropriate motion, they lacked standing to do so. Specifically, the district court held the Grandparents could not gain standing based on K.S.A. 2019 Supp. 23-3301(a) (grandparent visitation rights) in order to enforce the coparenting agreement because they were seeking more than visitation rights under the agreement.

The Grandparents timely filed a motion for reconsideration and request for additional findings. They argued the district court erred in finding a motion to intervene was required, claiming they were only asserting a right under K.S.A. 2019 Supp. 23-3301. They further asserted the district court should have addressed its concerns with a potential lack of notice to Regina and Matthew by holding the proceedings in abeyance until proper notice was given, freely granting leave to amend the motion, or entering an order requiring notice to be given to both Regina and Matthew. Finally, they claimed the district court "never reached the issue of whether the Rogers were co-parents." The district court denied the motion to reconsider.

ANALYSIS

The Grandparents present three basic issues for us to resolve:

"1. Does a district court with jurisdiction over Regina and her children in a divorce proceeding have subject matter [jurisdiction] to enforce a contract between Regina and her parents?

"2. Does a district court, with jurisdiction over the subject minor children in a divorce proceeding, also have subject matter jurisdiction to enforce a contract between the parent of those children and her parents concerning the care and custody of those same children?

"3. When a parent enters into a co-parenting agreement and subsequently files a waiver of notice of hearing on the motion to enforce that agreement, is there sufficient

4

evidence from the contract itself and the waiver of notice to find that the parent has knowingly exercised her parental preference?"

As explained below, we agree with the district court that it did not have jurisdiction to address the Grandparents' motion based on their lack of standing. Because the Grandparents lacked standing, we decline to address the merits of their other claims.

*The district court did not have jurisdiction to enforce the coparenting agreement in the divorce proceeding.*

The Grandparents generally argue the district court erred in determining it lacked subject matter jurisdiction to enforce the coparenting agreement. The Grandparents' argument on this issue centers on (1) whether the district court erroneously interpreted, applied, or imposed various procedural requirements for the Grandparents to intervene in the divorce case and (2) whether the nature of the coparenting agreement itself was within the scope of the district court's authority over the custody of the children in the divorce case. Thus, this issue presents questions of statutory interpretation and jurisdiction. Interpretation of a statute is a question of law subject to unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). Whether jurisdiction exists is also a question of law subject to unlimited review. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017).

A court's power to decide an issue

"only arises when the question is presented in an actual case or controversy between parties. Standing is a requirement for a case or controversy. Standing is also a component of subject matter jurisdiction. As a jurisdictional matter, standing requires the court to decide whether a party has alleged a sufficient personal stake in the outcome of the controversy to invoke jurisdiction and to justify the court exercising its remedial powers

5

on the party's behalf. [Citations omitted.]" *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 678, 359 P.3d 33 (2015).

Before the court can decide an issue, "it must first determine whether it has subject matter jurisdiction based on [the party's] standing." 302 Kan. at 678. If the district court lacks jurisdiction, "'the appellate court likewise does not acquire jurisdiction over the subject matter of the appeal.'" *In re Care & Treatment of Emerson*, 306 Kan. at 39. When the record discloses a lack of subject matter jurisdiction, the appellate court must dismiss the appeal. *Wiechman v. Huddleston*, 304 Kan. 80, 85, 370 P.3d 1194 (2016).

In support of their argument, the Grandparents primarily rely on three Kansas appellate cases: *In re Adoption of T.M.M.H.*, 307 Kan. 902, 416 P.3d 999 (2018); *Frazier v. Goudschaal*, 296 Kan. 730, 295 P.3d 542 (2013); and *In re Marriage of Nelson*, 34 Kan. App. 2d 879, 125 P.3d 1081 (2006). The Grandparents' reliance on these cases is misplaced as they are factually and procedurally distinguishable.

In *Nelson*, the district court approved the parents' agreed to parenting plan placing the children in the custody of their paternal aunt. The mother subsequently filed a motion for change in custody, which the aunt opposed. The Grandparents claim: "*Nelson* recognized that a third-party sister could intervene in a divorce action based upon a child custody agreement." This assertion is not accurate. *Nelson* addressed whether the mother waived the parental preference doctrine in favor of the paternal aunt. 34 Kan. App. 2d at 883-85. The aunt's standing was not explicitly at issue in *Nelson*. It may have been implicitly recognized the aunt had standing to intervene, but *Nelson* is distinguishable because the district court approved an agreed parenting agreement between both parents. See K.S.A. 2019 Supp. 23-3202. Here, the agreement at issue—the coparenting agreement—is exclusively between Regina and the Grandparents. This agreement is separate and apart from the district court's custody order, which does not mention the Grandparents. *Nelson* is highly distinguishable and not persuasive.

6

*Frazier* is also factually and procedurally distinguishable. Frazier and her long-term same-sex partner, Goudschaal, entered into coparenting agreements prior to the birth of two children. Goudschaal was the biological mother of both children; however, the coparenting agreements

> "identified Frazier as a de facto parent and specified that her 'relationship with the children should be protected and promoted'; that the parties intended 'to jointly and equally share parental responsibility'; that each of the parties 'shall pay the same percent of [child] support as her net income compares to [their] combined net incomes'; 'that all major decisions affecting [the] children . . . shall be made jointly by both parties'; and that in the event of a separation 'the person who has actual physical custody w[ould] take all steps necessary to maximize the other's visitation' with the children." 296 Kan. at 733.

The *Frazier* court held Frazier had standing to assert her claims regarding custody, visitation, and child support under the Kansas Parentage Act (KPA), K.S.A. 23-2201 et seq. Under the KPA, Frazier was considered an interested party based on her assertion of a mother-child relationship. 296 Kan. at 745-47; see K.S.A. 23-2220 ("Any interested party may bring an action to determine the existence or nonexistence of a mother and child relationship."). Importantly, the Grandparents have not claimed the KPA gives them standing.

*Frazier* is distinguishable because it arose based on a contract between the parties to the coparenting agreement—specifically, a dispute as to whether the coparenting agreement was legally enforceable. Here, there is no dispute between Regina and the Grandparents as to the enforceability of the contract or the application of any of its provisions. The Grandparents did not seek to enforce the contract in a separate action against Regina; rather, they sought to have the agreement blessed and enforced by the district court in the divorce proceedings between Matthew and Regina when the Grandparents were never parties to the original proceedings.

In *In re Adoption of T.M.M.H.*, 307 Kan. at 908, our Supreme Court held a "two-prong standing test . . . applies when a statute provides the basis for asserting a right to seek a judicial remedy. Under this test, courts analyze standing as a matter of (1) statute and (2) common law. . . . [B]oth prongs must be established." The *In re Adoption of T.M.M.H.* court held the fact a grandmother had grandparent visitation rights did not give her statutory standing as an interested party to contest the stepparent adoption of her grandchild under K.S.A. 59-2111 et seq., the Kansas Adoption and Relinquishment Act. 307 Kan. at 909. The standing issue in *Frazier* was highly specific to the mother-child relationship under the KPA. See 296 Kan. at 745-47. Accordingly, *Frazier* cannot be read as broadly conferring standing upon any party to a coparenting agreement to seek enforcement of the agreement in any court with jurisdiction over the custody of the children who are the subject of the agreement. Clearly, *Frazier* asserted both a common law basis—determining the enforceability and consequences of the contract—and a statutory basis—determining the existence of a mother-child relationship under the KPA—for seeking a judicial remedy. See 296 Kan. at 745-46.

The Grandparents generally asserted a common law basis for standing—enforcing the contract. The Grandparents also asserted a statutory basis for standing under K.S.A. 2019 Supp. 23-3301 (grandparent visitation). Under K.S.A. 2019 Supp. 23-3301(a), a district court may grant grandparents and stepparents visitation rights in a divorce proceeding. The problem with the Grandparents' argument is they were seeking more than just visitation rights through enforcement of the coparenting agreement. The Grandparents even acknowledge they were seeking more than visitation rights. But the Grandparents argue there is no explicit statutory limit on what visitation rights include. Essentially, they regard visitation as a minimum threshold, not a limit. Specifically, the Grandparents assert:  "At its common sense core 'visitation rights' means having physical custody of the children for some period of time." The Grandparents' argument is unsupported and unsound.

Without any citation to pertinent authority, the Grandparents argue the district court could have enforced the coparenting custody arrangement under a statutory order regarding visitation. Failure to support a point with pertinent authority or show """why it is sound despite a lack of supporting authority is akin to failing to brief an issue.""" *In re Adoption of T.M.M.H.*, 307 Kan. at 912. Under K.S.A. 2019 Supp. 23-2711(a)(5), the district court granting the divorce decree may also enter "an order allocating parental decision-making and entering a parenting plan as authorized by article 32 of chapter 23 of the Kansas Statutes Annotated, and amendments thereto." Under K.S.A. 2019 Supp. 23-3201, a court entering a custody order "shall determine legal custody, residency and parenting time of a child in accordance with the best interests of the child." The Grandparents, under these facts, are not claiming to be parents.

In contrast, K.S.A. 2019 Supp. 23-3301(a) only provides for the divorce court to grant "visitation rights" to grandparents. To conclude "visitation rights" as used in K.S.A. 2019 Supp. 23-3301(a) is synonymous with "legal custody, residency and parenting time" as used in K.S.A. 2019 Supp. 23-3201 would render the distinctions in the statutory language meaningless. When interpreting statutes, we must """avoid unreasonable results and should presume that the legislature does not intend to enact useless or meaningless legislation.""" *In re Marriage of Traster*, 301 Kan. 88, 98, 339 P.3d 778 (2014). Kansas caselaw necessarily recognizes legal custody as entailing greater rights than visitation. See, generally, *Davis v. Heath*, 35 Kan. App. 2d 86, 93, 128 P.3d 434 (2006).

Here, the Grandparents essentially argue:

- The district court has general authority in a divorce proceeding to enter a custody order;
- The coparenting agreement has bearing on the custody of the children;

- The district court has authority to grant visitation to grandparents in a divorce proceeding;

- Visitation is similar to custody;

- Therefore, the Grandparents could seek to enforce the coparenting agreement in the divorce case.

The Grandparents' reasoning is flawed because they are attempting to use grandparent visitation—a limited *statutory* remedy they could seek irrespective of the wishes of Regina or Matthew—to enforce a legal right arising solely under contract. See *Frazier*, 296 Kan. at 751 (biological parent may contract to share custody of children with another person "so long as the intent, and effect, of the arrangement was to promote the welfare and best interests of the children"); *Davis*, 35 Kan. App. 2d at 92-93 (court may grant grandparent visitation even when two fit parents do not want grandparent to have visitation rights).

Because the Grandparents' statutory basis for standing fails, the Grandparents failed to satisfy both prongs of the two-prong test for standing. The district court correctly found the Grandparents lacked standing in the divorce case and denied their motion. Therefore, we dismiss the appeal for lack of subject matter jurisdiction. See *In re Care & Treatment of Emerson*, 306 Kan. at 39. With dismissal of this action, we decline to address the Grandparents' other claims of error.

Appeal dismissed.